[No. C.D. 3664.   En Banc.   December 12, 1985.]

*In the Matter of the Disciplinary Proceeding Against* MALCOLM S. MCLEOD, *an Attorney at Law.*

*Robert C. Mussehl,* for appellant.

*Robert D. Welden,* for Bar Association.

DOLLIVER, C.J.—This matter comes before the court, pursuant to RLD 7.2, on the appeal of attorney Malcolm S. McLeod from a decision of the Disciplinary Board of the Washington State Bar Association recommending he be suspended from the practice of law for a period of 90 days. The vote suspending McLeod was 6 to 5. The five dissenters recommended McLeod be disbarred. Respondent McLeod makes six assignments of error to the findings and conclusions of the Disciplinary Board in its order of January 11, 1985. The sufficiency of the evidence supporting these findings and conclusions is the sole issue presented on appeal relative to those assignments of error. McLeod also claims error in the alleged irregularity of evidence submitted to the Disciplinary Board on September 12, 1984.

Malcolm McLeod was admitted to the practice of law in the state of Washington on August 26, 1950. He represented Christine Ruth Deaner for a number of years and, among other things, drafted her will in which he was named as executor. Mrs. Deaner is in her late eighties, with no relatives living in the state of Washington. In March 1981, Mrs. Deaner was involved in a pedestrian/automobile accident. McLeod represented her in a lawsuit from which she received a settlement of $22,500.

The check for $22,500 was deposited into McLeod's client trust account on December 16, 1981. On January 27, 1982, pursuant to his fee agreement with Mrs. Deaner, McLeod paid himself $7,499.96 as his legal fee. After paying various creditors of Mrs. Deaner, he gave her a check for $5,494.85 and advised her he was continuing to hold $4,000 in his trust account against possible subrogation claims. Whether there were any actual subrogation claims was a subject of conflicting testimony. The transactions at issue in this dis-

ciplinary action arose out of McLeod's handling and treatment of the $4,000.

On February 15, 1982, McLeod sent Mrs. Deaner a letter of account with enclosures, which included a "hold harmless agreement". At some point this agreement was altered to include the words:

> & you to hold $4000. in a 30 month,14% Certificate with Wn Mutual,as security.

The Board found this alteration took place after Mrs. Deaner had signed and returned the agreement by McLeod, or at his direction, and without Mrs. Deaner's knowledge or authority. This agreement was not presented at earlier requests for production or depositions by the bar association, but only introduced by McLeod at his first disciplinary hearing on January 12, 1983.

On February 14, 1982, state bar counsel wrote McLeod and advised that the bar association was investigating a complaint of Mrs. Deaner regarding his handling of her funds. On March 12, 1982, McLeod deposited Mrs. Deaner's $4,000 in a 30–month savings certificate of deposit with Washington Mutual Savings Bank in the name of "Malcolm McLeod or Ruth Deaner, joint with right of survivorship." McLeod signed a signature card but Mrs. Deaner did not.

On March 17, 1982, McLeod sent a photocopy of the certificate to Mrs. Deaner. The date of maturity on the photocopy had been obscured by a piece of paper which was placed over the date. Thus, in the photocopy, it is ambiguous as to whether the certificate had a 30–day or a 30–month maturity date. Sometime in April 1982, Mrs. Deaner employed attorney Richard Kilpatrick to help solve her confusion over McLeod's retention of her $4,000.

This disciplinary action originally went to hearing on January 12, 1983, and was continued for final argument on March 24, 1983. The hearing officer found McLeod had failed to render and deliver promptly appropriate accounts to his client, Mrs. Deaner, in violation of former CPR DR

9–102(B)(3) and (4) and recommended a 30–day suspension for McLeod. The Disciplinary Board reviewed these findings pursuant to RLD 6.1(a) and remanded the case for entry of findings and/or conclusions on three questions, as follows:

1. Whether Mr. McLeod had any improper motive in placing his client trust funds in the form of joint tenancy with a right of survivorship in himself?
2. Whether the covered material on the Xeroxed copy of the certificate of deposit (EX. 22) was done by Mr. McLeod or under his direction?
3. Whether the entry of additional words following "undersigned" on the letter dated February 15, 1982, (EX. D) was added after the document was signed by Christine R. Deaner.

The hearing on the order of remand was held on April 23, 1984. The hearing officer answered question one by concluding the evidence did not show by a clear preponderance that McLeod had any improper motive in his manner of handling of the funds in question. He answered question two by concluding that the photocopy of the certificate which was sent to Mrs. Deaner obscuring the maturity date was prepared at McLeod's direction. He did not find by a clear preponderance of the evidence that the certificate was obscured at McLeod's direction. In response to question three, the hearing officer found the agreement was altered after it was signed by Mrs. Deaner and returned to McLeod's office. The hearing officer again recommended a 30–day suspension.

On September 12, 1984, the Disciplinary Board made certain modifications in the hearing officer's findings and conclusions. The Board, upon review of the record, found the alteration to the agreement was done by McLeod or at his direction and without Mrs. Deaner's knowledge or authority. It also found the photocopy of the certificate was obscured at the direction of McLeod. The Board concluded McLeod offered the agreement in the disciplinary hearing knowing it was false or altered evidence.

The Board added a new conclusion of law providing that

McLeod's placement of funds in a certificate rather than in a separately identified trust account constituted a violation of CPR DR 9–102.

The six findings of fact and conclusions of law of the Disciplinary Board to which error is assigned are as follows:

1. Finding of fact 1.9(d):

According to Mr. Beck, the February 15, 1982, "hold harmless agreement" bears several alterations, as follows.

. . .

d. The last two lines of the text commencing with "& you to hold . . ." shows crowding and contraction in the way that it is typed, leading Mr. Beck to conclude that it may have been altered after it had been signed by Mrs. Deaner and that it was typed in the contracted form in which it appears in order to crowd it into the available space.

2. Finding of fact 1.11:

The "hold harmless agreement" dated February 15, 1982, was mailed to Mrs. Deaner on or about February 15, 1982. At that time, the last two lines commencing with "& you to hold . . ." did not appear on the "hold harmless agreement". The "hold harmless agreement" was in Mrs. Deaner's custody until she signed it and returned it to Mr. McLeod's office.

3. Finding of fact 1.12:

Finding of Fact 1.12 regarding the Hold Harmless Agreement is modified to provide as follows:

"The language in the 'Hold Harmless Agreement' commencing with '& you to hold . . .' was added by Mr. McLeod or at his direction and without Mrs. Deaner's knowledge or authority sometime after it was signed by Mrs. Deaner and returned to Mr. McLeod's office.

Conclusion of law 2.3:

In answer to the third question in the order of remand, I find that the February 15, 1982, "hold harmless agreement" was altered to add the language commencing with "& you to hold $4,000. . . ." after it was signed by Mrs. Deaner and was returned to Mr. McLeod's office.

4. Conclusion of law 2.2:

Conclusion of Law 2.2 is modified to read as follows:

"In answer to the second question in the Order of Remand, I find that the photocopy of the certificate of deposit which was sent to Mrs. Deaner obscuring the maturity date was prepared, and the obscurance was made, at the direction of Malcolm McLeod."

5. Conclusion of law 2.4:

Conclusion of Law 2.4 is modified . . . so that it provides as follows:
"Malcolm McLeod offered the February 15, 1982 'Hold Harmless Agreement' in the disciplinary proceeding knowing that it was false or altered evidence."

6. New conclusion of law:

A new Conclusion of Law is added to the Hearing Officer's Decision, providing as follows:
"Malcolm McLeod's placement of Mrs. Deaner's funds in a certificate of deposit, rather than in a separately identified trust account, constituted a violation of DR 9–102."

The only issue raised by McLeod is the sufficiency of the evidence to support these findings and conclusions. We have examined the record and hold there was sufficient evidence to support each finding of fact and conclusion of law. No useful purpose would be served by recounting the testimony which leads us to this holding; sufficient to say, it is in the record.

Finally, McLeod assigns error to a claimed irregularity in evidence submitted to the Disciplinary Board on September 12, 1984. He alleges the bar association committed an error when it failed to include a letter dated May 21, 1984, as part of the evidence submitted to the Board. McLeod claims the letter of May 21 was specifically directed to the Disciplinary Board and that the failure of the bar association to send this letter to the Board was an attempt to undermine his efforts "to put forth a valid defense against [the] false and misleading accusations . . ."

The letter was directed to the hearing officer prior to submitting his findings and conclusions. The letter includes a "cc: Disciplinary Committee" at the bottom of it. RLD 6.2(a) provides each party may file a statement in opposition to the decision of the hearing officer. The letter of May

21 does not appear to be a proper statement pursuant to RLD 6.2. It provides no new evidence or argument not already available in the records submitted to the Board. There is no error.

The primary purpose of disciplinary actions is to protect the public and to preserve confidence in the legal profession and the judicial system. *In re Salvesen,* 94 Wn.2d 73, 614 P.2d 1264 (1980). A recent case set forth three factors to be considered in every disciplinary case. *In re Stock,* 104 Wn.2d 273, 704 P.2d 611 (1985) (applying factors discussed in *In re Noble,* 100 Wn.2d 88, 667 P.2d 608 (1983)). These factors are: (1) the purpose of attorney discipline (public protection and deterrence of other attorneys); (2) the proportionality of the sanction to the attorney's misconduct; and (3) the effect of the sanction on the attorney. *In re Stock,* at 281–84.

The Board recommended a 90–day suspension for McLeod. While the recommendation of the Board is given serious consideration, this court retains ultimate responsibility for determining the proper measure of discipline. We have adopted the standard, however, that the Board's recommendation should be affirmed unless this court can articulate a specific reason to reject the recommendation. *In re Stock,* at 284. Applying the factors from *In re Stock,* we find no specific reason to reject the recommendation of the Board.

Although we do not look favorably on McLeod's continued lack of awareness as to his transgressions and although his actions violated his professional responsibility to his client, McLeod was not found to have misused Mrs. Deaner's funds. Under the facts and circumstances of this case, we believe disbarment is too severe a sanction. The recommendation of the Disciplinary Board of a 90–day suspension is affirmed.

UTTER, BRACHTENBACH, PEARSON, ANDERSEN, CALLOW, and DURHAM, JJ., and CUNNINGHAM, J. Pro Tem., concur.

DORE, J., concurs in the result.