[No. 200,035-5. En Banc.]
Argued May 11, 2004. Decided July 8, 2004.

*In the Matter of the Disciplinary Proceeding Against*
RICARDO A. GUARNERO, *an Attorney at Law.*

*Ricardo A. Guarnero*, pro se.

*Kurt M. Bulmer*, for Guarnero.

*Joanne S. Abelson*; and *Thomas V. Harris* (of *Perey-Harris Trial Lawyers*), for the Bar Association.

OWENS, J. — Ricardo Guarnero was admitted to the practice of law in Washington in 1989. In June 2001, the Washington State Bar Association (WSBA) charged Guarnero with six counts of misconduct, all arising from his alleged forgery of a client's signature on a declaration faxed to the trial judge and opposing counsel. Having determined that the WSBA established the charged violations by a clear preponderance of the evidence, the hearing officer concluded that the presumptive sanction was disbarment. Finding six aggravating factors and a single mitigating factor, the hearing officer recommended disbarment. The Disciplinary Board thereafter ordered the adoption of the hearing officer's findings, conclusions, and recommendation. Guarnero asks this court to dismiss the charges.

We affirm the Disciplinary Board's order disbarring Guarnero.

## FACTS

Jamie Farrell filed suit against King County in August 1998, alleging that she had been sexually abused as an inpatient at a county owned substance abuse treatment

facility. Guarnero appeared on her behalf in January 2000. In preparation for a May 19, 2000, hearing on the county's motion for summary judgment on statute of limitations grounds, Farrell drafted a declaration and e-mailed it to Guarnero. On May 10, 2000, Farrell drove from her home in Lake Stevens to Guarnero's Seattle office, where she reviewed, signed, and dated the declaration, which was printed on pleading paper. Because her name had been printed on the declaration's signature page as "Jamie L. Farrell," Farrell signed her name using her middle initial. On May 15, 2000, Guarnero directed his office assistant, Jennifer Morgans, to copy the opposition papers (including the 17-page declaration) for service and filing. Due to a copy machine error, page 17 of the declaration was not copied, so the copies served on Judge Sharon Armstrong and Senior Deputy Prosecutor Jill Hendrix lacked the declaration's signature page. On May 16, Hendrix's assistant called Guarnero to request a copy of the signature page, and Guarnero responded by printing and faxing an unsigned copy of the page. Hendrix prepared and filed a reply brief on May 18, asking the court to strike the declaration as untimely and unsigned.

On May 19, based on Guarnero's assurances that he could produce a signed copy of the declaration, Judge Armstrong allowed argument on the summary judgment motion to go forward. Judge Armstrong denied the summary judgment motion but directed Guarnero to fax a copy of the executed signature page to the court and counsel by 4:30 that afternoon. Guarnero was uncertain whether the original signature page could be immediately located; consequently, on the short walk back to his office from the hearing, which had ended between 3:25 and 3:35 P.M., Guarnero called Morgans and told her to call Farrell about coming in to sign another declaration. When he arrived at his office, Morgans told him that she had left a message for Farrell with Farrell's mother.

What happened next gave rise to the WSBA's charges of misconduct. Guarnero claims that he located in his files the

declaration's signature page and personally faxed copies to Judge Armstrong and Hendrix a few minutes after 4:00 P.M. However, the signature page that Guarnero faxed to Judge Armstrong and Hendrix was not the signature page that his assistant had filed with the court. Unaware of Guarnero's actions, Morgans had gone to the clerk's office to search for the missing page. She returned to the office with a copy of the original signature page, which had been located in a file used to hold loose pleadings not yet affixed in the case's master file. To account for the dual signature pages, Guarnero has since contended that Farrell "either signed multiple signature pages . . . while in his office on May 10th or she faxed a signature page to him on May 10th from her home or from her place of work at some time prior to her coming to his office on that day."[1] Hendrix, however, having seen Farrell's signature on previous documents, immediately suspected that the signature on the faxed document was a forgery. Hendrix suspected that, rather than discovering a second legitimately executed signature page in his file, Guarnero had simply printed another original page 17 from his computer, signed his client's name in ink (erringly deleting her middle initial), and faxed copies of the forged signature page to her and Judge Armstrong.

After obtaining an expert opinion that the signature had been forged, Hendrix moved for reconsideration of the denial of the county's summary judgment motion. In response, Guarnero drafted a declaration for Farrell to sign, stating that she had sent him a signed signature page prior to signing the second one at his office. According to her testimony, even though it had initially made no sense to her that she would have faxed a signature page to Guarnero prior to arriving at his office to sign one, she was nevertheless persuaded by his assurances that they had done a lot of prior faxing and e-mailing. When Farrell signed the supplemental declaration, she did not have before her a copy of the

[1] Decision Papers at 5, Finding of Fact 16. Although Guarnero had suggested the former explanation in a pretrial deposition, he adhered to the latter theory at the hearing. *See* Answering Br. of WSBA at 18.

questioned signature page. The supplemental declaration was one of the documents that Guarnero filed in opposition to the county's motion for reconsideration. Judge Armstrong advised counsel that she would rehear the summary judgment motion on June 26, 2000, and that a different judge would consider the forgery issue.

Following the Monday, June 26, hearing, Judge Armstrong stated that she would rule by Friday. On Friday, before Judge Armstrong issued a ruling, the parties attended mediation and settled Farrell's case for $50,000. Although Farrell was dissatisfied with the settlement, Guarnero advised her to accept it and to pursue a malpractice claim against her former attorney. Following Guarnero's advice, Farrell later obtained her file from Guarnero and met with other counsel about the potential malpractice claim. According to Farrell, it was during one of those meetings that she first saw a copy of the questioned signature page (i.e., a copy of the page faxed to Judge Armstrong and Hendrix), and she recognized the signature as a forgery. Her lawyer ultimately advised her that, if anyone had damaged her case, it was Guarnero.

After the King County prosecutor filed a grievance against Guarnero regarding the forgery, Guarnero sent Farrell an e-mail telling her of the grievance and reminding her that, were the WSBA to prove that the signature was a forgery, she could be accused of perjury for having signed the supplemental declaration affirming that the signature on the questioned document was hers. The WSBA obtained Guarnero's client file from Farrell's lawyer and found in it the ink-signed original of the allegedly forged signature page. At the hearing, the WSBA's handwriting expert testified that the original of the allegedly forged signature page was a "simulated forgery," one that is drawn or traced (not fluidly written) in an effort to "reproduce the pictorial aspects of a genuine signature." 2 Tr. of Proceedings at 612. As to how the ink-signed original of the questioned document came to be in his client file, Guarnero testified at the hearing that Farrell had either brought it with her to his

office on May 10 or planted it in the file at some point after Guarnero turned the file over to her. Farrell testified that, prior to the disciplinary hearing, she had not seen the ink-signed original of the questioned signature page, and she denied having planted the document in the file—a file that had been in her possession only for the two weeks prior to her consultation with other lawyers about a suit against her first lawyer.

The hearing officer determined that the WSBA had proved by a clear preponderance of the evidence all six counts charged in the June 15, 2001, complaint. In sum, the charges were that Guarnero had (1) forged Farrell's signature, (2) faxed the forgery to the trial judge, (3) served it on the prosecutor, (4) served and filed another declaration falsely denying his creation of the forgery, (5) deceitfully secured a supplemental declaration from Farrell stating that she had signed the forged document, and (6) continued his representation of Farrell without telling her of his forgery and the associated risks of his continued representation. The hearing officer concluded that, while Guarnero had acted negligently in failing to apprise Farrell of the risks of his continued representation, he had acted knowingly and intentionally as to all other charges. The hearing officer identified disbarment as the presumptive sanction under standards 4.61 and 5.11 of the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991 & Supp. 1992). That sanction remained unchanged by the hearing officer's finding of a single mitigator (absence of prior disciplinary record) and six aggravators: dishonest or selfish motive, pattern of misconduct, multiple offenses, submission of false evidence or statements during the disciplinary process, refusal to acknowledge the wrongful nature of his conduct, and substantial experience in the practice of law.

The hearing officer's findings, conclusions, and recommendation were filed on December 27, 2002, and were amended, on the WSBA's motion, on January 15, 2003. On May 16, 2003, by a vote of 10-2, the Disciplinary Board

adopted the hearing officer's findings and conclusions and his recommended sanction of disbarment; the two dissenters concluded that the WSBA had not "met its burden of proof on the issue of who committed the forgery." Decision Papers (DP) at 15. Guarnero seeks dismissal of the charges.

## ISSUES

(1) a. Does substantial evidence support the hearing officer's factual finding that Guarnero forged his client's signature on the questioned document?

b. When proving its case by circumstantial evidence, must the WSBA disprove the respondent lawyer's alternative theories?

(2) Of what significance is the statement in *In re Discipline of Little*, 40 Wn.2d 421, 430, 244 P.2d 255 (1952), that, in a lawyer discipline proceeding, "[e]very doubt should be resolved in [the respondent lawyer's] favor"?

(3) Did the hearing officer err in permitting cross-examination of Guarnero on his reasons for leaving the United States Attorney's Office?

(4) Was there prosecutorial misconduct?

## ANALYSIS

 *Standard of Review.* The WSBA must prove each count by a "clear preponderance of the evidence." ELC 10.14(b) (former RLD 4.11(b)). A " '[c]lear preponderance' is an intermediate standard of proof . . . requiring greater certainty than 'simple preponderance' but not to the extent required under 'beyond reasonable doubt.' " *In re Disciplinary Proceeding Against Allotta*, 109 Wn.2d 787, 792, 748 P.2d 628 (1988). Guarnero contends that the WSBA failed to prove by a clear preponderance of the evidence that he forged his client's signature on her declaration. When challenged on appeal, a hearing officer's findings of fact will be upheld where they are supported by substantial evidence. *See* ELC 11.12(b); *In re Disciplinary Proceeding*

*Against Huddleston*, 137 Wn.2d 560, 568, 974 P.2d 325 (1999). The findings, "while not conclusive, are nonetheless entitled to considerable weight . . . especially . . . when the credibility and veracity of witnesses are at issue." *Allotta*, 109 Wn.2d at 793-94 (citation omitted); *In re Disciplinary Proceeding Against Cohen*, 149 Wn.2d 323, 329, 67 P.3d 1086 (2003). Conclusions of law are reviewed de novo and must flow from the findings of fact. ELC 11.12(b); *Cohen*, 149 Wn.2d at 329-30. The Board's recommended sanctions are to be given "serious consideration," but "this court retains ultimate responsibility for determining the proper measure of discipline." *In re Disciplinary Proceeding Against McLeod*, 104 Wn.2d 859, 865, 711 P.2d 310 (1985); ELC 2.1. This court has "adopted the standard . . . that the Board's recommendation should be affirmed unless this court can articulate a specific reason to reject the recommendation." *McLeod*, 104 Wn.2d at 865. Whereas this court " 'will hesitate to reject a unanimous recommendation . . . in the absence of clear reasons for doing so,' " "the converse . . . is that '[a] recommendation from which there is a dissent may well be more readily rejected.' " *In re Disciplinary Proceeding Against Boelter*, 139 Wn.2d 81, 98-99, 985 P.2d 328 (1999) (quoting *In re Disciplinary Proceeding Against Noble*, 100 Wn.2d 88, 96, 667 P.2d 608 (1983)).

*Substantial Evidence of Forgery*. The parties agree that the pivotal finding is that Guarnero forged Farrell's signature on the questioned document:

> After having heard all of the testimony of the witnesses and of Mr. Guarnero, and having reviewed the exhibits with great care, one is compelled to the conclusion that *Mr. Guarnero himself created the signature on Exhibit 1* (the simulated forgery of Ms. Farrell's signature), and that he did so after he returned to his nearby office from the courthouse on May 19, 2000.

DP at 6, Finding of Fact (FF) 20 (emphasis added). Circumstantial evidence established that Guarnero signed the questioned document. Farrell testified that the signature

was not hers, and the WSBA's expert examined the ink-signed original of the questioned document, compared it to other samples of Farrell's signature, and concluded that the signature on the questioned document "was a 'simulated forgery' of Ms. Farrell's signature." DP at 5, FF 14. The WSBA established that Guarnero had the time and opportunity to create the simulated forgery by 4:05 P.M.: his office was only a few blocks from the courthouse where the hearing had adjourned by 3:35 P.M.; he knew how to print the signature page from his computer; and he had other examples of Farrell's signature lacking her middle initial. Guarnero admitted that he had faxed the disputed document himself.

In addition to the facts showing that Guarnero had the motive, time, and means to create the questioned document, his false statements and improbable alternative explanations provided further circumstantial evidence of his guilt. *See State v. Portee*, 25 Wn.2d 246, 254-57, 170 P.2d 326 (1946); *United States v. Burgos*, 94 F.3d 849, 868 (4th Cir. 1996), *cert. denied*, 519 U.S. 1151 (1997). Kristopher Bundy, an attorney in Hendrix's office, contacted Guarnero a few days after the summary judgment hearing and requested a nonfaxed copy of the questioned document. Guarnero told Bundy that he had obtained his copy from the court file and that Bundy could come pick it up. What Morgans handed Bundy was a copy of the genuine signature page that she had copied from the court file. Guarnero then explained to Bundy that Farrell had signed both and that he sometimes had his clients sign more than one original. In his telephone and in-person contacts with Bundy, Guarnero never suggested that Farrell had faxed one of the signature pages to his office—the explanation that he advanced at the hearing. Guarnero's interaction with Bundy undermines the credibility of his subsequent claim that Farrell had faxed the questioned signature page to him prior to signing the genuine signature page in his office, but the improbability of that sequence of events provides still greater circumstantial evidence of Guarnero's

responsibility for the forgery. Farrell denies performing the unreasonable act of faxing a signature page on the day she was driving to Guarnero's office to sign the declaration. Guarnero could not recall seeing the alleged fax arrive, nor could he recall how he had located the document after the summary judgment hearing. Still more telling is the absence of any fax machine imprint across the top of the questioned document. Mail Zone, the source of other faxes from Farrell to Guarnero, had no record of a fax to Guarnero on or around May 10, and its machine creates an imprint at the top of the faxed page.

In sum, substantial circumstantial evidence exists to support the hearing officer's factual finding that Guarnero himself was responsible for the simulated forgery of Farrell's signature on the questioned document. But Guarnero argues that it is not enough for the hearing officer to distill a reasonable result from substantial circumstantial evidence. In Guarnero's view, the WSBA, when proving its case by circumstantial evidence, must exclude or disprove the respondent lawyer's alternative theories. Guarnero claims that this requirement is derived from the following statement in *Allotta*: " ' "The facts relied upon to establish a theory by circumstantial evidence must be of such a nature and so related to each other that it is *the only conclusion that fairly or reasonably can be drawn from them.*" ' " 109 Wn.2d at 793 (emphasis added) (quoting *Grobe v. Valley Garbage Serv., Inc.*, 87 Wn.2d 217, 225-26, 551 P.2d 748 (1976), and *Schmidt v. Pioneer United Dairies*, 60 Wn.2d 271, 276, 373 P.2d 764 (1962)). The *Allotta* court did not state that the WSBA must disprove all other theories, but rather that it must produce facts from which only one reasonable conclusion may be inferred. Relying on the evidence at hearing, the hearing officer fairly rejected as unreasonable Guarnero's suggestion that Farrell had faxed the questioned signature page to him on May 10.

*Significance of the* Little *Directive*. Guarnero seeks application of the *Little* court's statement that, in a lawyer discipline proceeding, "[e]very doubt should be resolved in

[the respondent lawyer's] favor." 40 Wn.2d at 430. We agree with the WSBA that this statement, made in 1952 and last relied on in a majority opinion in 1973,[2] is tantamount to a "beyond-*any*-doubt standard" and "is irreconcilably inconsistent with the 'clear preponderance of the evidence' standard" adopted in RLD 4.11(b) in 1983 and ELC 10.14(b) in 2002. Answering Br. of WSBA at 37 (citing *Allotta*, 109 Wn.2d at 792). We conclude that the statement in *Little* that "[e]very doubt should be resolved in [the respondent lawyer's] favor" can have no vitality in light of the rule assigning the WSBA "the burden of establishing an act of misconduct by a clear preponderance of the evidence." ELC 10.14(b).

■ *Cross-Examination of Guarnero on Prior Employment*. Under the relaxed evidentiary rule applicable in disciplinary hearings, *see* ELC 10.14, the hearing officer permitted cross-examination of Guarnero on his reasons for leaving his prior employment with the United States Attorney's Office. The WSBA contends that the hearing officer properly exercised his discretion in permitting it, given that Guarnero's direct testimony as to his prior prestigious employment opened the door to further questioning. Relevant to Guarnero's past employment, the hearing officer thus made the following finding:

> Mr. Guarnero, while previously employed at the U.S. Attorney's Office, was accused of sexual misconduct with a client. Mr. Guarnero denied the accusation. His supervisor there, Mr. Kipnis, believed that Mr. Guarnero had lied to him in denying the allegations. Mr. Guarnero resigned from that office under threat of termination. Mr. Guarnero blamed his separation from the office on his supervisor, Mr. Kipnis, who he claimed was hostile to him.

DP at 8, FF 31. The hearing officer's subsequent finding originally stated as follows:

> Mr. Guarnero's past conduct and his conduct during this hearing demonstrates that he lacks the ethical and moral

---

[2] *See In re Disciplinary Proceeding Against Greenlee*, 82 Wn.2d 390, 393, 510 P.2d 1120 (1973).

compass and the sense of honor and self-discipline that is required by someone engaged in the practice of law. His attitude appears to be that any means to an end is appropriate and justifiable; his testimony in this matter exemplifies such an attitude.

DP at 8, FF 32. However, on the WSBA's motion, the finding was amended to clarify that the misconduct at issue warranted disbarment:

> Mr. Guarnero's past conduct in and of itself is probably not sufficient grounds for disbarring him; but that is not true in the present case as his conduct in the present case clearly demonstrates sufficient grounds for his disbarment.

DP at 12-13. We conclude that the hearing officer's assessment of Guarnero as unfit to practice law, *see* DP at 8, FF 33, was based on more than the exploration of Guarnero's past employment on cross-examination. Moreover, Guarnero's alleged misconduct in the United States Attorney's Office had no effect on the sanction analysis (in fact, Guarnero's lone mitigating factor was the absence of a prior disciplinary record). The cross-examination was permissible, and the resulting testimony did not improperly sway the hearing officer.

 *Prosecutorial Misconduct*. Guarnero's claims of prosecutorial misconduct, which were not raised before the Disciplinary Board, are meritless. Guarnero asserts that in two instances disciplinary counsel improperly shifted the burden to him. First, in response to Guarnero's counsel's suggestion in closing argument that on May 10 Farrell's mother had created and faxed the questioned document to Guarnero's office, disciplinary counsel was entitled to remark in rebuttal that Guarnero had failed to depose Farrell's mother or call her as a witness. *State v. Duckett*, 73 Wn.2d 692, 696-97, 440 P.2d 485 (1968). Similarly, disciplinary counsel stated that no expert would controvert the testimony of the WSBA's expert that the questioned signature was a simulated forgery; the statement permissibly emphasized the significance of the expert testimony that the WSBA had offered, in contrast to the absence of any

countervailing expert testimony. *See State v. Bebb*, 44 Wn. App. 803, 815-16, 723 P.2d 512 (1986), *aff'd*, 108 Wn.2d 515, 740 P.2d 829 (1987). Guarnero also suggests that disciplinary counsel's reference to him as a liar was misconduct, but in light of the evidence, disciplinary counsel was entitled to draw that inference from the evidence. *State v. Copeland*, 130 Wn.2d 244, 290-91, 922 P.2d 1304 (1996). Nor was it misconduct for disciplinary counsel to refer to Guarnero's private medical information; Guarnero's lawyer had stated he had no objection to inquiry regarding mitigating factors, and the hearing officer mentioned the medical information only in that context.

## CONCLUSION

We conclude that substantial circumstantial evidence exists to support the hearing officer's finding that Guarnero forged Farrell's signature on the questioned document. We affirm the order of the Disciplinary Board disbarring Guarnero.

ALEXANDER, C.J.; JOHNSON, MADSEN, IRELAND, BRIDGE, CHAMBERS, and FAIRHURST, JJ.; and BAKER, J. Pro Tem., concur.