214 P.3d 133 (2009)
In the Matter of the DISCIPLINARY PROCEEDING Against Larry A. BOTIMER, an Attorney at Law.
No. 200,625-6.
Supreme Court of Washington, En Banc.
Argued May 21, 2009.
Decided August 20, 2009.
*135 Paul Eugene Simmerly, Attorney at Law, Bellevue, WA, for Petitioner.
Randy Von Beitel, Washington State Bar Association, Seattle, WA, for Respondent.
OWENS, J.
¶ 1 The Washington State Bar Association (WSBA) accused attorney Larry Botimer of violating several provisions of the Rules of Professional Conduct (RPCs) regarding his representation and legal services provided to Ruth Reinking (Ruth), including failure to obtain informed consent in writing to a conflict of interest and improper disclosure of client confidences. The Disciplinary Board (Board) affirmed a six-month suspension handed down by the hearing officer.
¶ 2 We affirm Botimer's suspension because the hearing officer's findings of fact are supported by substantial evidence and in turn support the hearing officer's conclusions of law. Botimer's attempt to reargue the facts is unavailing, and his interpretations of the governing law misapprehend the nature of his duty under the RPCs.

FACTS
¶ 3 Botimer served for several years as a tax preparer and tax advisor to Ruth and other members of the Reinking family, including Ruth's son Jan Reinking (Jan) and *136 his wife Janet Reinking (Janet). Botimer had known the Reinking family since the late 1960s, when he and Jan first met in high school. Botimer worked at the Internal Revenue Service (IRS) from 1989 to 1995. After Botimer retired from the IRS, he established a law practice focused on tax work. From 1995 to 2000, he prepared yearly tax returns for Ruth and from 1995 to 2001, he did the same for Jan and Janet.
¶ 4 Botimer assisted Ruth with decisions related to her ownership stake in Magnolia Health Care Center, Inc. (Magnolia), a nursing home facility. In 1992, Ruth retired from the business but retained ownership of the Magnolia property  leasing back to Jan and Janet. Apparently, Botimer advised Jan and Janet regarding incorporation of Magnolia as a subchapter S corporation, and he advised Ruth about creating a so-called "`consulting business'" as part of an overall tax strategy. Clerk's Papers (CP) at 161, Findings of Fact (FF) 17, 18. Botimer also prepared tax returns for Magnolia.
¶ 5 Botimer also assisted Ruth with business matters related to another care facility run by her other son, James Reinking (James). Located in Spokane, Alternative Care Corporation (ACC) is a nursing facility incorporated under subchapter S. Ruth guaranteed loans for ACC and secured these loans with her Magnolia real property, yet received no stock in the Spokane facility. Botimer apparently advised her as to her options regarding ACC, including restructuring the business so that Ruth could both be involved in management of ACC and receive potential tax benefits from reflecting ACC's losses on her own tax returns.
¶ 6 Controversy arose when James would not recognize that Ruth and/or Jan had an ownership stake in ACC. Both brothers disagreed as to the extent of each one's stock ownership. Botimer assisted Jan and Ruth in negotiations with James regarding potential solutions. Botimer did not obtain conflict waivers in the course of his assistance of the various members of the Reinking family. Further, he did not discuss the advantages and disadvantages of joint representation. Botimer did not use a written client engagement agreement or any other method to obtain consent in writing to the conflict.
¶ 7 Ruth, Jan, and Janet decided to close Magnolia and sell the property in August 2000. The proceeds of this sale were to go to the three family members, with Jan and Janet expecting half. Apparently, Botimer also requested that his fees be paid out of these proceeds. Upon the sale, Ruth did not share the proceeds with Jan, Janet, or Botimer. Instead, she used the proceeds to satisfy her loan guarantees to ACC.
¶ 8 In 2002, Botimer terminated his representation of Ruth with a letter stating that "her failure to cooperate with him, refusal to follow his advice and failure to pay for [his] legal services" led to his decision. CP at 167-68, FF 58. The letter also informed Ruth that Botimer was sending correspondence to the IRS to inform the agency "that [Ruth's tax] returns do not contain a true record of your taxable income and that you neglected to report gifts made to your son." Ex. A-42. Botimer followed through and sent the letter to the IRS informing the agency of Ruth's failure to, contrary to his advice, correctly state her income and pay gift tax. The letter also contained allegations that Ruth illegally invested her grandchildren's trust property.
¶ 9 To resolve disputes stemming from the sale of Magnolia, Jan and Janet sued Ruth, James, and ACC in 2004 on theories of conversion, fraudulent misrepresentation, breach of contract, and others. Jan and Janet sought damages of $530,951.30, which represented one-half of the proceeds from the Magnolia property. CP at 168, FF 60. Botimer cooperated with Jan and Janet's attorney in the lawsuit, Paul Simmerly, and provided him with three declarations to use in pretrial proceedings. The declarations detailed background information about Ruth's business affairs related to Magnolia, as well as information about her estate plans. He attached copies of Ruth's tax returns and other documents related to his prior tax preparation work. Botimer also declared information describing Jan and Janet's lease of the Magnolia real property and business transactions with James as tax avoidance tactics. Ruth did not give her consent to *137 these disclosures, and no court ordered this revelation of Ruth's client information.[1]
¶ 10 During pretrial proceedings, Ruth brought a motion in limine before Judge Suzanne Barnett to exclude testimony or evidence of prior conversations or dealings between Ruth and Botimer. Judge Barnett denied the motion and allowed Botimer to testify about his earlier exchanges with Ruth. While her rulings did not specify whether or not Botimer's testimony and disclosure ran afoul of the attorney-client privilege, it seems that she felt as if there was a waiver. The trial concluded, and the jury awarded $530,091.30. Judge Barnett ordered shares of ACC to be held in a constructive trust by James for the benefit of Jan, Janet, and Ruth.
¶ 11 WSBA filed an amended formal complaint against Botimer on August 9, 2007. The complaint alleged three counts of violating the RPCs stemming from Botimer's representation of Ruth in her tax, business, and estate planning matters. A four-day hearing followed, after which the hearing officer filed findings of fact and conclusions of law, as well as his recommendation. The hearing officer agreed with WSBA on all three counts and ruled that Botimer violated the following provisions of the RPCs.[2]
 Count 1: Former RPC 1.7(b) by representing Ruth, Jan, and Janet; thereby creating a conflict of interest without obtaining informed consent in the form of conflict waivers.
 Count 2: Former RPC 1.6 and 1.9(b) by disclosing private information without consent to Jan's lawyer when Jan and Ruth were counterparties to a lawsuit.
 Count 3: Former RPC 1.6 and 1.9(b) by disclosing without consent private information regarding Ruth's prior tax returns to the IRS.
CP at 171-76, Conclusions of Law 74-87, 89, 92, 93. The hearing officer found negligent conduct with respect to count 1 and knowing conduct with respect to counts 2 and 3.
¶ 12 The hearing officer applied sanctions as guided by the American Bar Association's Standards for Imposing Lawyer Sanctions (1991 & Supp.1992) (hereinafter ABA Standards). For count 1, the hearing officer found that reprimand was the presumptive sanction under ABA Standards standard 4.33. For counts 2 and 3, the hearing officer found that suspension was the presumptive sanction under ABA Standards standard 4.22. Because the hearing officer found multiple violations, he ruled that the ultimate sanction should be consistent with the most serious instance of misconduct. Thus, the hearing officer found that a suspension for the minimum term of six months was the appropriate presumptive sanction. Although the hearing officer found aggravating factors (multiple offenses, refusal to acknowledge wrongfulness, vulnerability of the victim), he found them offset by mitigating factors (no prior discipline, no selfish or dishonest motive as to counts 2 and 3) and found no reason for deviation from the presumptive sanction. Therefore, the hearing officer recommended a six-month suspension.
¶ 13 Botimer appealed the decision of the hearing officer to the Board. He sought dismissal of all the charges and challenged all of the violations found below. A unanimous Board agreed in large part with the hearing officer's findings of fact but did change the mental state from negligent to knowing with regard to count 1. Further, the Board changed the presumptive sanction of count 1 to suspension rather than reprimand. However, the Board left in place the six-month suspension. In addition, the Board denied Botimer's motion to reopen disciplinary proceedings in order to introduce what he categorized as new evidence.

ANALYSIS

1. Scope and Standard of Review
¶ 14 We consider three issues arising from Botimer's disciplinary proceedings. First, *138 did the Board err when it affirmed the hearing officer's findings of fact and conclusions of law with regard to Botimer's alleged violations? Second, did the Board err when it affirmed the hearing officer's recommended sanction of a six-month suspension for Botimer's multiple violations? Third, did the Board abuse its discretion when it denied Botimer's motion to reopen disciplinary proceedings to hear new evidence in the form of Judge Barnett's ruling on attorney-client privilege and a letter of dismissal of disciplinary proceedings against another attorney involved in the Reinking litigation?
¶ 15 This court exercises plenary authority in matters of attorney discipline. In re Disciplinary Proceeding Against Carmick, 146 Wash.2d 582, 593, 48 P.3d 311 (2002). We give considerable weight to the hearing officer's findings of fact, especially with regard to the credibility of witnesses, and we will uphold those findings so long as they are supported by "substantial evidence." In re Disciplinary Proceeding Against Guarnero, 152 Wash.2d 51, 58, 93 P.3d 166 (2004) (citing ELC 11.12(b)).[3] "In reviewing these findings, we look at the entire record. However, `we ordinarily will not disturb the findings of fact made upon conflicting evidence.'" In re Disciplinary Proceeding Against Huddleston, 137 Wash.2d 560, 568, 974 P.2d 325 (1999) (citation omitted) (quoting In re Disciplinary Proceedings Against Miller, 95 Wash.2d 453, 457, 625 P.2d 701 (1981)). In the end, WSBA has the ultimate "burden of establishing an act of misconduct by a clear preponderance of the evidence." In re Disciplinary Proceeding Against Allotta, 109 Wash.2d 787, 792, 748 P.2d 628 (1988). "`Clear preponderance' is an intermediate standard of proof ... requiring greater certainty than `simple preponderance' but not to the extent required under `beyond [a] reasonable doubt.'" Id. Thus, a clear preponderance of all the facts proved must support a finding of misconduct.
¶ 16 We review conclusions of law de novo which must be supported by the factual findings. Guarnero, 152 Wash.2d at 59, 93 P.3d 166 (citing ELC 11.12(b)). In so doing, we give "`serious consideration'" to the Board's recommended sanction and generally affirm it "`unless [the] court can articulate a specific reason to reject the recommendation.'" Guarnero, 152 Wash.2d at 59, 93 P.3d 166 (quoting In re Disciplinary Proceeding Against McLeod, 104 Wash.2d 859, 865, 711 P.2d 310 (1985)).

2. Botimer's Challenge to the Counts against Him and the Underlying Facts
¶ 17 Botimer assigns error to several of the hearing officer's findings of fact. The following three sections will incorporate those disputed findings as they relate to the conclusions of law drawn under each count of the disciplinary proceedings.

A. Count 1: Improper Conflict of Interest Stemming from Representation of Ruth, Jan, and Janet

¶ 18 Botimer argues that there was no manifest conflict of interest, and even if there was, it was merely a potential conflict. Under former RPC 1.7(b)(2), an attorney faced with a concurrent conflict of interest may continue in joint representation, but only upon obtaining informed consent in writing from each affected client. The hearing officer found no such consent and concluded that Botimer violated former RPC 1.7(b). We affirm the hearing officer's unconsented conflict conclusion as it is supported by substantial evidence.
¶ 19 The hearing officer found conflict inherent in Ruth and Jan's various business arrangements. Ruth and Jan were lessor and lessee of the Magnolia real property, and Botimer assisted both of them in this venture. Botimer also assisted Ruth on estate planning matters, while advising Jan as a potential beneficiary of Ruth's estate. Also, when advising on a possible restructuring of ACC, a potential conflict arose in the context of Botimer's representation of Ruth and Jan. *139 Substantial evidence exists on the record to support these findings and conclusions. E.g., Ex. A-7; Ex. A-28, at 3-4; Ex. A-10.
¶ 20 The need to obtain informed consent in writing arises when there exists a "likelihood that a difference in interests will eventuate" that may "materially interfere with the lawyer's independent professional judgment." ABA ANNOTATED MODEL RULES OF PROF'L CONDUCT rule 1.7 cmt. 8, at 109 (5th ed.2003); see former RPC 1.7. In In re Disciplinary Proceeding Against Marshall, 160 Wash.2d 317, 157 P.3d 859 (2007), this court reasoned that former RPC 1.7(b) "assumes that multiple representation will necessarily require consultation and consent in writing, reasonably so since the rule imposes these requirements anytime there is potential conflict." Id. at 336, 157 P.3d 859. Further, "former RPC 1.7(b) applies even absent a direct conflict." Id. at 337, 157 P.3d 859. Botimer never obtained consent from Ruth, Jan, or Janet for multiple representation and does not now dispute this fact.

B. Count 2: Improper Disclosure of Client Confidences by Sharing Information with Counsel for Jan

¶ 21 Primarily, Botimer argues that because none of the client information he provided to Jan's attorney was privileged, he did not improperly disclose client secrets under former RPC 1.6 and 1.9(b). A client confidence can be waived by the client's own conduct. See, e.g., Dietz v. John Doe, 131 Wash.2d 835, 850, 935 P.2d 611 (1997). While Judge Barnett accepted Botimer's testimony and declarations into evidence in the 2004 litigation, the hearing officer below did not find Botimer's contentions of waiver credible. Further, Judge Barnett's order did not appear to make specific findings as to waiver or address the implications of former RPC 1.6.
¶ 22 We hold that the hearing officer's findings of fact are supported by substantial evidence, as they are based on credibility findings. Botimer was bound by former RPC 1.6 and 1.9(b) to hold in confidence information related to representation of Ruth. His failure to do so was a violation of former RPC 1.6 because the disclosure occurred before any court order. Moreover, a "court's determination that particular information is not covered by the attorney-client privilege is not the same as a determination that the lawyer has no ethical obligation to protect the information from disclosure in other contexts." MODEL RULES OF PROF'L CONDUCT, supra, rule 1.6, at 87-88.
¶ 23 Notwithstanding the supporting evidence, Botimer disputes the hearing officer's conclusion that collateral estoppel does not prevent a conclusion of law contrary to Judge Barnett's ruling on waiver of attorney-client privilege. His analysis is not convincing. Collateral estoppel, or issue preclusion, applies solely to "issues actually litigated and necessarily determined are precluded." Shoemaker v. City of Bremerton, 109 Wash.2d 504, 507, 745 P.2d 858 (1987).[4] The issue of compliance with the RPCs was not before Judge Barnett. Cf. In re Disciplinary Proceeding Against Whitney, 155 Wash.2d 451, 464, 120 P.3d 550 (2005) (declining to apply a factual finding made in a superior court matter because the issue of whether the lawyer violated the RPCs was not an issue before the superior court).

C. Count 3: Improper Disclosure of Client Confidences by Sending a Letter to the IRS Reflecting Probable Misstatements on Prior Returns

¶ 24 Botimer offers up a defense to the charge of improper disclosure of client information to the IRS on the grounds that he was fulfilling a legal duty to disclose under federal law. His arguments are not availing. Applicable federal tax code does not create a duty to do more than advise a client of past mistakes. 31 C.F.R. § 10.21. Moreover, the duty to preserve client confidences *140 outweighs whatever marginal benefit gained by reporting past wrongdoings. The crime/fraud exception under former RPC 1.6(b)(1) does not apply to arguably fraudulent tax returns. Finally, Botimer misapprehended his risk of perjury under federal law.
¶ 25 Botimer contends that the federal tax code creates a duty on the part of tax preparers to disclose prior false entries on personal tax returns of their clients. The hearing officer found no such duty, based largely on the testimony of a tax expert. The hearing officer was entitled to credit the expert's testimony. Further, construction of the applicable statutes, reviewed de novo, reveals that Botimer's position is untenable. Under 31 C.F.R. § 10.21, a tax preparer "must advise the client promptly of the fact of such noncompliance, error, or omission. The practitioner must advise the client of the consequences as provided under the Code and regulations of such noncompliance, error, or omission." Moreover, 31 C.F.R. § 10.51(a)(4) creates a sanctionable offense only when a practitioner knowingly provides false or misleading information but phrases the offense in the present tense and says nothing about a duty of later disclosure.
¶ 26 In addition, the crime/fraud exception does not permit the revelation of prior unlawful conduct in the form of false information placed on a tax return. In In re Disciplinary Proceeding Against Schafer, 149 Wash.2d 148, 66 P.3d 1036 (2003), this court reasoned:
[T]he judicially created crime-fraud exception... generally does not apply when an attorney seeks to disclose past wrongdoing... because the benefit of revealing a past harm that can no longer be prevented does not outweigh the injury to attorney-client relationships that would result by disclosure. See United States v. Zolin, 491 U.S. 554, 562-63, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989) ("The attorney-client privilege must necessarily protect the confidences of wrongdoers, but the reason for that protection  the centrality of open client and attorney communication to the proper functioning of our adversary system of justice  `ceas[es] to operate at a certain point, namely, where the desired advice refers not to prior wrongdoing, but to future wrongdoing.'" (quoting 8 JOHN HENRY WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 2298, at 573 (John T. McNaughton ed., 4th rev. ed.1961)) (citing Clark v. United States, 289 U.S. 1, 15, 53 S.Ct. 465, 77 L.Ed. 993 (1933))). This concept is consistent with the rejection in the RPCs of reporting past crimes. See RPC 1.6(b)(1) (permitting attorney to reveal confidences or secrets to prevent the client from committing a crime).
Id. at 166, 66 P.3d 1036 (third alteration in original). The prior false information could be mitigated, but this duty falls onto the client, not on Botimer as the tax preparer.
¶ 27 Finally, Botimer misapprehended his risk of perjury prosecution. He argues that by signing a tax return as a tax preparer, he has exposed himself to perjury prosecution should a return later be revealed as false or fraudulent. However, the proscription about perjurious preparation only applies contemporaneously to filing of the return. The signature line on a form 1040 tax return represents a declaration that the tax preparer has "examined this return and accompanying schedules and statements, and to the best of [the preparers] knowledge and belief, they are true correct, and complete." Ex. A-28, at Ex. B p. 2 (emphasis added). According to Botimer, he had no knowledge of the false information at the time he placed his signature on Ruth's tax form. Moreover, the presence of his signature does not constitute a continuing "crime" under former RPC 1.6(b)(1). See United States v. Kirkman, 755 F.Supp. 304, 306 (D.Idaho 1991) (tax evasion is not a continuing offense).

3. Refusal of the Board to Reopen the Discipline Proceedings to Hear New Evidence

¶ 28 Botimer failed to convince the Board to reopen the disciplinary proceedings to hear two new pieces of evidence. He sought to offer Judge Barnett's order clarifying the trial court record on the propriety of his disclosures to Jan's attorney under the attorney-client privileges. In addition, he sought to offer a letter from WSBA to Jan regarding a grievance Jan filed against another *141 attorney involved in the Reinking litigation.
¶ 29 Botimer seems to argue that the Board erred in denying his motion to reopen disciplinary proceedings in order to enter additional evidence on the record. The Board evaluated the merits of the motion under ELC 11.11, which gives the Board discretion to reopen the disciplinary proceedings. Thus, this court reviews the denial under an abuse of discretion standard. In re Disciplinary Proceeding Against Kuvara, 149 Wash.2d 237, 249, 66 P.3d 1057 (2003). The Board has abused its discretion only when its "exercise of discretion was manifestly unreasonable, based on untenable grounds, or based on untenable reasons." Moreman v. Butcher, 126 Wash.2d 36, 40, 891 P.2d 725 (1995).
¶ 30 Here, the evidence proffered by Botimer was available to him during the initial disciplinary proceeding. "[A] moving party must show ... that the evidence could not have been discovered before the original hearing by the exercise of due diligence and that the new evidence will likely change the result." In re Disciplinary Proceeding Against Brothers, 149 Wash.2d 575, 583, 70 P.3d 940 (2003). As discussed above, the ruling by Judge Barnett did not discuss Botimer's obligations under the RPCs, so it is of questionable relevance. The other piece of evidence, a letter of dismissal of a disciplinary action brought by Jan against the opposing counsel in the 2004 litigation, is not relevant. The Board was within its discretion to find the dismissal as tangential and refuse to reopen the proceedings. Botimer presents no compelling reason why the Board's decision was unreasonable.

CONCLUSION
¶ 31 Botimer's entanglements in the Reinking family's tax and business affairs created the potential for conflict of interest. Because he failed to obtain the necessary waiver, Botimer violated former RPC 1.7. Further, Botimer did not satisfy former RPC 1.6 when he failed to protect his client confidences up to the limit of applicable law. Finally, Botimer violated former RPC 1.6 and 1.9(b) when he divulged client confidences to the IRS by letter. Because Botimer's arguments as to the substance of his violations are not availing, we affirm the amended findings of fact and conclusions of law entered by the Board.
WE CONCUR: ALEXANDER, C.J., C. JOHNSON, MADSEN, SANDERS, CHAMBERS, FAIRHURST, J.M. JOHNSON, and STEPHENS, JJ.
NOTES
[1] Botimer moved to reopen the disciplinary proceedings in order to introduce a ruling by Judge Suzanne Barnett determining that Botimer's proffered declarations were not protected by the attorney-client privilege.
[2] All citations to the RPC provisions reference the rules applicable at the time of Botimer's alleged misconduct, prior to the September 1, 2006, amendments.
[3] "Substantial evidence exists if the record contains `evidence in sufficient quantum to persuade a fair-minded, rational person of the truth of a declared premise.'" In re Disciplinary Proceedings Against Bonet, 144 Wash.2d 502, 511, 29 P.3d 1242 (2001) (internal quotation marks omitted) (quoting In re Welfare of Snyder, 85 Wash.2d 182, 185-86, 532 P.2d 278 (1975)).
[4] The issue preclusion elements are:

"(1) identical issues; (2) a final judgment on the merits; (3) the party against whom the plea is asserted must have been a party to or in privity with a party to the prior adjudication; and (4) application of the doctrine must not work an injustice on the party against whom the doctrine is to be applied."
Shoemaker, 109 Wash.2d at 507, 745 P.2d 858 (quoting Malland v. Dep't of Ret. Sys., 103 Wash.2d 484, 489, 694 P.2d 16 (1985)).