246 P.3d 1236 (2011)
In the Matter of the DISCIPLINARY PROCEEDING AGAINST Sandra L. FERGUSON (WSBA No. 27472), an Attorney at Law.
No. 200,719-8.
Supreme Court of Washington, En Banc.
Argued June 8, 2010.
Decided February 3, 2011.
*1239 Shawn Timothy Newman, Attorney at Law, Olympia, WA, for Petitioner.
M. Craig Bray, Robert Dean Welden, Elizabeth Ann Turner, Washington State Bar Association, Seattle, WA, for Respondent.
MADSEN, C.J.
¶ 1 This matter involves an attorney disciplinary proceeding against Sandra L. Ferguson. The hearing officer found that Ferguson appeared ex parte before a superior court judge in a contested matter without notice to opposing counsel, failed to disclose all relevant facts at an ex parte hearing, and obtained relief through misrepresentation and deceit in violation of the Rules of Professional Conduct (RPC). The hearing officer recommended a 30 day suspension of Ferguson's law license. The Washington State Bar Association Disciplinary Board (Board) adopted a majority of the hearing officer's findings and conclusions but increased the sanction recommendation to a 90 day suspension.
¶ 2 Ferguson contends she engaged in no wrongful conduct. She characterizes this case as involving a legal issue: when may an attorney appear before a court ex parte and *1240 what relief is she entitled to obtain? However, properly viewed, the issue is Ms. Ferguson's disagreement with the hearing officer's findings of fact and conclusions of law.
¶ 3 Ample evidence in the record supports both. To the extent contrary evidence exists, it consists mainly of Ms. Ferguson's own testimony, particularly as to her state of mind, which the hearing officer was entitled to find not credible. Ultimately, the hearing officer found that Ferguson intended to appear ex parte in order to obtain relief she was not entitled to obtain ex parte, namely, a writ of restitution granting possession of a house to her clients pursuant to a finding of contempt against the opposing party and that she made knowing misstatements at the hearing.
¶ 4 We hold that substantial evidence in the record supports the Board's findings of fact, which in turn support its conclusions of law. We also hold that the Board's recommended 90 day suspension is an appropriate sanction. Finally, we hold that the Board Chair's reduced assessment of costs was not an abuse of discretion.

FACTS
¶ 5 In 2003-2004, Andrew and Julianne Ferguson (the Fergusons) and Linda and Douglas Bransford entered into three written agreements involving two pieces of property in Anacortes, Washington: the Nantucket Inn, a restaurant owned by the Bransfords, and a rental house owned by the Fergusons. The agreements were drafted by a real estate agent and did not clearly spell out the legal effect on the properties, the parties' rights, or the remedies for default. What is clear is that the Fergusons gave the Bransfords $53,000 in equity in their house as a down payment toward the purchase of the Nantucket Inn. The Bransfords were to make the mortgage payments for the house and the Fergusons were to pay rent for the Nantucket Inn. Pursuant to the agreements, the Fergusons took possession of the restaurant and the Bransfords took possession of the house. By 2004, both parties were alleging the other party was in default. In December 2004, the Bransfords filed suit in superior court seeking to nullify the Nantucket Inn sale agreement and property purchase and to quiet title to the house in the Bransfords. On February 7, 2005, the Fergusons filed their own complaint seeking a writ of restitution to gain possession of the house.
¶ 6 On March 18, 2005, Skagit County Superior Court Judge Michael Rickert held a show cause hearing on the Fergusons' writ of restitution for possession of the house. Each party was represented by counsel. In a written order, the superior court ruled that an additional hearing should be scheduled to sort out the parties' rights, but in the interim, the Bransfords were to bring the mortgage payments current by March 28.
¶ 7 On March 30, the judge held a second hearing. Counsel for the Fergusons, Stephen Schutt, alleged the Bransfords had not made all the mortgage payments required by the March 18 order. Counsel for the Bransfords, Douglas Owens, responded that the Bransfords had mailed the payments to the mortgage company recently, although they had not yet been received, and he offered to have Mrs. Bransford testify on that point.[1] During the hearing, the Bransfords' counsel explained to the court that if the Fergusons were given temporary possession of the house, they would "file bankruptcy, immediately claim that they [had] equity in the house, and then [the Bransfords would be] out in the cold," meaning the bankruptcy court would deprive the superior court of jurisdiction and the Fergusons would be able to retain possession permanently. Decision Papers (DP) at 19. Furthermore, he stated, "[I]f the Fergusons go back to temporary possession, they can then claim the house as a homestead, Your Honor, and then everything ends." Id.
¶ 8 At the March 30 hearing, the court denied the writ of restitution and ordered the case set for trial on the merits as soon as possible, deciding "more testimony and comments and study on it" was necessary to determine the rights of each party in this "fairly muddy situation." Id. In a written order, the court consolidated the two actions, *1241 found the Bransfords were entitled to maintain possession of the house at that time in order to preserve the status quo, and ordered the Bransfords to continue making mortgage payments on the house.
¶ 9 Around the time of these hearings, the Fergusons were concerned about their worsening financial situation and were consulting with bankruptcy attorney Mary Schmitt to explore their options. Prior to the comments of Doug Owens at the March 30 hearing, Mary Schmitt informed the Fergusons that gaining possession of the house prior to bankruptcy would enhance their financial and legal position significantly. It would enable them to avoid foreclosure, claim a homestead exemption, and retain possession of the house with substantial equity.
¶ 10 Attorney Schutt ceased representing the Fergusons after the March hearing, and Ms. Ferguson, Andrew Ferguson's sister, stepped in as counsel for the Fergusons. Between April 4 and April 8, 2005, Ms. Ferguson spent 22 hours researching and drafting documents. The hearing officer found her research "revealed the statutory and court rule notice and hearing requirements applicable to issuance of a Writ of Restitution, Order of Contempt, Preliminary Injunction, and Temporary Restraining Order." Id. at 21. On April 8, Ferguson finished drafting various pleadings. On April 11, without notice to the Bransfords' counsel, she appeared ex parte before Judge Rickert.
¶ 11 At the disciplinary hearing, Ferguson's sister-in-law testified that she had called PHH Mortgage (PHH), the mortgage company, on the morning of April 11, and was told that the Bransfords' mortgage checks had not yet posted to the account. She also testified that because she had no new information, she did not provide Ms. Ferguson with any new information from PHH on the morning of the ex parte hearing. However, a PHH employee testified that on the morning of April 11, PHH records would have shown that the Bransfords' checks had posted to the account on April 6.
¶ 12 During the ex parte proceedings on April 11, Ferguson presented her pleadings and argued that the Bransfords had violated the court's March 18 order and had lied to the court at the March 30 hearing by failing to make the required mortgage payments yet stating they had done so. Ferguson did not inform the court of the Fergusons' intention to file for bankruptcy. She also knew that the mortgage company had recently sent the Fergusons notice of a new requirement that all mortgage payments be made with certified funds. Ferguson also knew that the Fergusons' former attorney had recently sent the Bransfords' attorney notice of this new requirement. Rather than informing the court of this relevant information that might account for the delay in the mortgage company's processing of checks sent by the Bransfords, Ferguson failed to disclose the information, instead arguing that the Bransfords were lying and had not made the mortgage payments.
¶ 13 The judge signed Ferguson's proposed order holding the Bransfords in contempt and granted a writ of restitution for possession of the house to the Fergusons as a remedy for the Bransfords' contempt. Attorney Owens received notice of the ex parte hearing and order approximately two days after the hearing. He called the judge in a state of distress and then scheduled a hearing for his motion to vacate the order. The afternoon before the hearing, the Fergusons filed for bankruptcy using funds provided by Ferguson. Ms. Ferguson appeared at the motion to vacate hearing with notice of the bankruptcy filing that deprived the superior court of jurisdiction. Ultimately, the Bransfords' claim for the house was never heard. When the Bransfords received an offer of purchase for the Nantucket Inn, the parties settled all claims with respect to both properties. The Bransfords gave up all claims to the house in the settlement.
¶ 14 As a result of this ex parte communication, the Washington State Bar Association (WSBA) charged Ms. Ferguson with the following:
Count 1
By presenting motions and supporting declarations, appearing and obtaining an ex parte Writ of Restitution, Order of Contempt and other relief without notice to the opposing party or opposing party's counsel, *1242 Respondent violated one or more of the former Rules of Professional Conduct (RPC): 3.5(b), 8.4(d) and 3.4(c).
Count 2
By failing to disclose relevant facts to the Court during an ex parte appearance, Respondent violated former RPC 3.3(f).
Count 3
By obtaining an ex parte Writ of Restitution and other relief through deception and/or misrepresentation, Respondent violated one or more of the following former Rules of Professional Conduct: 8.4(c) and 8.4(d).
DP at 16-17.
¶ 15 The hearing officer found that WSBA had proved all three counts and recommended 30 days' suspension as a sanction. The Board adopted most of the hearing officer's findings of fact and conclusions of law but increased the suspension to 90 days.[2] Ferguson exercised her right to appeal.
¶ 16 After the clerk of this court received Ferguson's notice of appeal, the Chair of the Board (Chair) issued an order assessing a portion of the costs of the proceedings against Ferguson. Because the order did not assess all of the costs claimed by WSBA, WSBA filed a motion asking the Chair to reconsider his order. The Chair informed WSBA that the Rules for Enforcement of Lawyer Conduct (ELCs) did not authorize him to reconsider his order. The Chair filed the motion without action.
¶ 17 WSBA now seeks review of the Chair's order on costs and his subsequent finding that he was not authorized to reconsider his decision. WSBA argues that the Chair's assessment of costs and the Chair's determination that the ELCs did not authorize reconsideration were based on errors of fact and law. WSBA asks this court to reverse the Chair's order and assess costs against Ferguson in the full amount claimed by WSBA. We passed this motion to the merits.

ANALYSIS
¶ 18 Sandra Ferguson alleges that several of the hearing officer's findings of fact are not supported by "substantial evidence" in the record. Opening Br. of Resp't Ferguson (Br. of Resp't) at 2-3.[3]
¶ 19 This court gives a hearing officer's findings of fact "considerable weight," especially in matters of witness credibility, and will uphold the findings where they are supported by "substantial evidence." In re Disciplinary Proceeding Against Botimer, 166 Wash.2d 759, 767, 214 P.3d 133 (2009). "Substantial evidence exists if the record contains `evidence in sufficient quantum to persuade a fair-minded, rational person of the truth of a declared premise.'" Id. at 767 n. 3, 214 P.3d 133 (internal quotation marks omitted) (quoting In re Disciplinary Proceedings Against Bonet, 144 Wash.2d 502, 511, 29 P.3d 1242 (2001)). In addition, a "hearing officer is entitled to draw reasonable inferences from the testimony and sequence of events presented at the disciplinary hearing." In re Disciplinary Proceeding Against VanDerbeek, 153 Wash.2d 64, 82, 101 P.3d 88 (2004). In determining whether substantial evidence exists, the court "look[s] at the entire record" but "`ordinarily will not disturb the findings of fact made upon conflicting evidence.'" Botimer, 166 Wash.2d at 767, 214 P.3d 133 (internal quotation marks omitted) (quoting In re Disciplinary Proceedings Against Huddleston, 137 Wash.2d 560, 568, 974 P.2d 325 (1999)).

*1243 I. Disputed Findings of Fact

A. State of mind
¶ 20 Ms. Ferguson challenges the hearing officer's findings of fact regarding her state of mind.
¶ 21 The hearing officer found that Ferguson believed gaining possession of the disputed rental house prior to bankruptcy would improve the Fergusons' financial and legal position significantly. Ferguson admitted as much in her testimony. The testimony of other witnesses and a fax from the Fergusons' previous attorney corroborate Ferguson's knowledge of the advantages of gaining possession. 1 Verbatim Transcript of Proceedings (VTP) at 106-07 (Andrew Ferguson test.); id. at 151-52, 154 (Schmitt test.); id. at 209-10 (ex. 31, fax from Schutt). Conflicting evidence consists of little more than Ferguson's assertion that she does not specifically recall reading a particular, relevant line of the fax. The hearing officer's finding is supported by substantial evidence.
¶ 22 The hearing officer also found that Ms. Ferguson was aware that the court did not review all the pleadings. Ferguson does not contest that the pleadings she presented to the court exceeded 70 pages. She does not claim that she observed the court review all the pleadings or give any indication that it had done so before the hearing. Ferguson's description of the events provides circumstantial evidence that the court clerk took the pleadings to the judge only moments before the hearing began. The Fergusons both testified that the ex parte hearing lasted a matter of minutes. 3 VTP at 475 (Julianne Ferguson testified 5-10 min.), 480 (Julianne Ferguson testified in deposition 20 min.), 448 (Andrew Ferguson testified that "it went very fast."). Substantial evidence supports a reasonable inference that Ferguson was aware that the judge did not have time to read the lengthy pleadings.
¶ 23 Ms. Ferguson's declaration in support of her motion stated she had "not yet had time to provide notice" to opposing counsel Owens due to "the exigency of the circumstances." Ex. 35, at 2. The hearing officer found this statement to be false. Ferguson's testimony and declaration indicates she completed drafting her pleadings at just after midnight on April 7 at the latest, which would have given her several days to contact Owens before the April 11 hearing. Ex. 35, at 1; 1 VTP at 212-14; but see 1 VTP at 212-13 (Ferguson says she possibly drafted the order later). Owens testified he had means of receiving messages through phone, answering machine, fax, or his assistant but received no notice until approximately two days after the April 11 ex parte hearing.[4] Ferguson admitted faxing or calling was an option, but she did not do so. Ferguson argued she was busy with CLE (continuing legal education) training all day on April 8, and she did not intend to be heard ex parte on April 11, but once the court clerk told her to go up to the ex parte room on April 11 she had no time to provide notice. However, these claims, even if credible, do not account for the remaining time Ferguson had to provide notice to Owens. Substantial evidence exists to support the hearing officer's finding.
¶ 24 The hearing officer also found that Ferguson failure to provide notice was a "conscious and knowing violation." DP at 26, ¶ 26. Ferguson admits she was aware she had not provided notice to Owens and that notice is generally required. Research documents in her case file and her own testimony reveal that she was aware of the specific notice requirements (as discussed below). In particular, she quoted the first sentence from RCW 7.21.030 in her motion, but did not include the second sentence that required notice and a hearing, and she did not include ellipses or any other indication of omitted text. Ferguson admits she left the notice language out but says she does not remember deciding to leave it out. The hearing officer was entitled to find this testimony not credible. We believe substantial evidence demonstrates that Ferguson had ample opportunity to provide notice to Owens between *1244 April 8 and April 11 but consciously decided not to do so.

B. False or misleading statements
¶ 25 Ferguson contests the hearing officer's findings that her pleadings contained statements that were false, misleading, or misrepresentations.
¶ 26 The hearing officer found Ferguson's statement that the Bransfords had no proof of mailing or payment at the March 30, 2005 hearing to be false. The transcript of the March 30 hearing reveals that when the court asked for proof, the Bransfords' attorney offered the sworn testimony of Mrs. Bransford as proof that she had mailed the checks on March 28. Evidence to the contrary consists of testimony by Ferguson who was not in attendance. Substantial evidence exists to find Ferguson's statement false.
¶ 27 The hearing officer also found that Ferguson falsely stated that the Bransfords had violated the March 18 order and had falsely informed the court at the March 30 hearing they had mailed the February and March payments in compliance with the order. The March 18 order required the Bransfords to bring the mortgage payments up to date by March 28. The March 30 hearing transcript reveals that Owens claimed the Bransfords were in compliance because they had mailed the payments on March 28 but "they simply [hadn't] been received yet." Ex. 22 at 1-3. An employee of PHH supported this statement, testifying that a check for the February and March payments was posted to the account on April 6, and given processing delays, this check could have been mailed by the Bransfords on March 28. Substantial evidence exists to support the hearing officer's finding that Ferguson's statement was objectively false and misrepresented Owens' statements at the March 30 hearing.[5]
¶ 28 The hearing officer found Ferguson's statement to Judge Rickert that a vagrant or indigent person had moved into the house to be misleading. All parties involved, including Ferguson, knew the person was the Bransfords' son. Ferguson defends her statement, saying he was both a vagrant and the Bransfords' son. She based her statement on information from Andrew Ferguson that he found the son living in the house in conditions that "seemed very ... transient, like he wasn't really living there" with garbage strewn about, cigarette butts on the roof, and a sleeping bag on the floor. 3 VTP at 553 (Ferguson test.); id. at 444 (Andrew Ferguson test.).
¶ 29 Ferguson's declaration submitted with her motion to Judge Rickert stated "[i]t is our understanding that the vagrant may be their adult son." Id. at 553. Thus, there is some evidence that she properly informed the court. However, given the hearing officer's findings regarding the length of the pleadings and the brief time Judge Rickert had to review all of the pleadings, the elucidating statement was effectively buried. Moreover, Ferguson testified that she could not recall if she had told the judge verbally that the Bransfords' son lived on the property. Substantial evidence supports the hearing officer's finding that Ferguson's use of the terms "vagrant" and "indigent" was misleading.

C. Notice requirements and CR 65(b)
¶ 30 Ms. Ferguson claims that she was seeking a temporary restraining order (TRO) and therefore was not required to give notice of the ex parte proceeding to opposing counsel. The hearing officer found that Ferguson's research did not support her assertion that the notice requirements under RCW 7.21.030 (contempt order), and a writ of restitution under CR 60(b) (relief from order due to fraud or other reasons) "are *1245 dispensed with by CR 65(b)." DP at 26. The hearing officer found that Ferguson did not make an appropriate showing under CR 65(b), which allows parties to seek a TRO without notice. Ferguson contests what her research showed and disputes the hearing officer's finding that she failed to make the required showing under CR 65(b).
¶ 31 Ferguson's case file and testimony provide evidence that she was aware of the RCW 7.21.030 motion for contempt order notice requirement and the CR 65(a) preliminary injunction notice requirement. 1 VTP at 218-20 (contempt); id. at 221, 227 (preliminary injunction).
¶ 32 Ms. Ferguson says she was seeking relief under CR 60(b), but her case file revealed no research on this rule. She also asserts that CR 65(b) relieved her of the notice requirements of CR 60(e). CR 60(e) requires the court to schedule a show cause hearing and requires the party seeking relief to provide notice to the opposing party prior to this future hearing. CR 60(e)(2)-(3). Ferguson points out that the order contains a blank space to fill in the future hearing date.
¶ 33 Ferguson attempts to characterize this issue as a matter of law. However, the hearing officer's conclusion appears to be based on a finding of fact: Ferguson's claim that she was seeking a TRO was not credible. Substantial evidence in the record supports the conclusion that Ferguson was attempting to obtain preliminary injunctive relief (in the form of a contempt order and writ of restitution under CR 60(b)) and not seeking a TRO.
¶ 34 For example, a TRO under CR 65(b) "shall expire by its terms," generally within 14 days, and must be "endorsed with the date and hour of issuance." CR 65(b). The order Ferguson drafted does not clearly state when, if ever, it expires. Moreover, the original order did not have a date or time of issuance listed, so it was not possible to calculate the expiration date. However, a later copy of the order displayed a handwritten time of issuance. Compare ex. 38 (original) with ex. 64 (altered); see also 1 VTP at 243-44, 239. Ferguson denies the writing is her handwriting, but WSBA's attorney suggested in his closing argument that only Ferguson had the motive to write in the time later and points out that Ferguson filed this copy of the order as an attachment to an affidavit. Ferguson insists the order was intended to provide temporary relief under CR 65(b). 1 VTP at 230-31 (Ferguson test.; ex. 33) (caption suggests temporary); id. at 232-33 (ex. 33) (some TRO or preliminary injunction requirements listed in motion). She admits, however, that none of her pleadings cite CR 65(b). This, she explained, was because she is not a numbers person.
¶ 35 Furthermore, a TRO permits no notice only when "immediate or irreparable injury" will result "before the adverse party or his attorney can be heard in opposition." CR 65(b). Ferguson claimed she did not have time to provide notice due to the "exigency of the circumstances." Ex. 35, at 2. As noted above, the hearing officer found this assertion to be false. Therefore, substantial evidence exists to find Ferguson did not and could not seek a TRO under CR 65(b) and was required to provide notice under RCW 7.21.030, CR 60(b), and/or CR 65(a).

D. Harm to the Bransfords
¶ 36 Ms. Ferguson contests the hearing officer's finding that the Bransfords suffered harm as a result of her ex parte appearance. The hearing officer found that Ferguson's ex parte appearance caused "increased legal expense and delay" due to the transfer of proceedings to bankruptcy court and the entry of an order finding the Bransfords in contempt of court. DP at 26.
¶ 37 It is undisputed that these harms occurred. The record contains a copy of the order signed by the judge finding the Bransfords in contempt of court as well as a copy of the notice of the Fergusons' bankruptcy filed on May 5, 2005 at 3:30 p.m. Bankruptcy attorney Mary Schmitt testified that "[j]ust the event of filing bankruptcy can result in higher costs to the creditor," including increased legal fees. 1 VTP at 196.
¶ 38 However, Ferguson claims that this harm was not caused by the ex parte hearing because she did not intend to be heard ex parte that day and sought a hearing for the purpose of avoiding foreclosure rather than filing bankruptcy. The record contains conflicting *1246 evidence regarding Ferguson's intentions and purposes in appearing ex parte. However, Ferguson's argument is not quite on point. Regardless of her intent, the ex parte hearing resulted in an order finding the Bransfords in contempt and granting possession of the house to the Fergusons, enabling them to bring the house into their bankruptcy filing. Moreover, the hearing officer was entitled to find portions of witness testimony regarding intentions not credible and to infer that Ferguson did intend the ex parte hearing to facilitate possession prior to bankruptcy due to the timing of the bankruptcy. Thus, the finding of harm caused by the ex parte hearing is supported by substantial evidence.

II. Disputed Conclusions of Law
¶ 39 Ms. Ferguson contests the hearing officer's conclusions of law in which he found she had committed all three counts alleged by WSBA. "Conclusions of law are reviewed de novo and must flow from the findings of fact." In re Disciplinary Proceeding Against Guarnero, 152 Wash.2d 51, 59, 93 P.3d 166 (2004); In re Disciplinary Proceeding Against Cramer, 168 Wash.2d 220, 241 n. 2, 225 P.3d 881 (2010).

A. Count 1
¶ 40 The hearing officer concluded the following with respect to count 1:
In appearing ex parte during the pendency of mature and contested proceedings and failing to give notice to opposing counsel, Respondent knowingly violated the due process requirements applicable to a Motion for Contempt, a Motion for a Writ of Restitution, and relief under CR 60(b) and CR 65(b).
Respondent's assertion that the allowance in CR 65(b) that circumstances can exist where a temporary restraining order may be obtained without notice to the adverse party dispenses with the notice requirements attendant to contempt, procurement of a Writ of Restitution and relief from judgment or order is incorrect. By seeking an order of contempt, a Writ of Restitution and CR 60 remedies ex parte, Respondent knowingly violated former RPC 3.4(c) and 3.5(b). [sic] and 8.4(d).
DP at 27.
¶ 41 The RPCs provide that a lawyer shall not "knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists," "communicate ex parte with [a judge] unless authorized to do so by law or court order" or "engage in conduct that is prejudicial to the administration of justice." RPC 3.4(c), 3.5(b), 8.4(d).
¶ 42 At the ex parte hearing, the court found the Bransfords in contempt of court for violating the March 18 order and making misrepresentations at the March 30 hearing. Based on this contempt finding, the court signed Ms. Ferguson's proposed order imposing "remedial sanctions" in the form of granting the Fergusons possession of the house through a writ of restitution. Ex. 38. RCW 7.21.030 controls the procedure for granting remedial sanctions based on contempt of court. The statute requires notice and a hearing before contempt sanctions may be imposed. RCW 7.21.030 (suspending hearing requirement for contempt based on actions occurring in front of judge during present proceedings). By seeking the contempt order Ferguson violated notice and hearing requirements under RCW 7.21.030 and .050.
¶ 43 CR 60(b)(4) authorizes the court to relieve a party of a judgment or order on motion when that order was obtained by fraud. This rule applies to Ferguson's motion because she was asking for relief from the March 18 order granting possession to the Bransfords based on their alleged fraud at the March 30 hearing. A motion under CR 60 does not allow for immediate relief but requires notice and a hearing and lists no exceptions to the notice and hearing requirement. CR 60(b)(2)-(3). Obtaining the order granting the writ of restitution without notice and a hearing violated CR 60(b).
¶ 44 Ms. Ferguson argues that all the violations depend on whether she violated RPC 3.5(b) by appearing ex parte before the judge. She argues that her ex parte appearance was permitted under CR 65(b), which *1247 authorizes a party to seek a TRO without notice to the opposing party under certain circumstances. This argument raises the factual questions regarding whether Ferguson was in fact proceeding under CR 65(b) and whether the relief she obtained was in fact a TRO.
¶ 45 The order appears to be drafted either to schedule a show cause hearing to obtain a preliminary injunction under CR 60(b) or to obtain the preliminary injunction ex parte. First, as discussed above, the hearing officer examined the results of Ferguson's research, heard testimony from Ferguson, and found that as a factual matter, Ferguson's claim that she intended to proceed under CR 65(b) was not credible. As WSBA points out, "a hearing officer is not bound by various explanations if he or she is not persuaded by them." Answering Br. of WSBA at 16 (citing In re Disciplinary Proceeding Against Whitt, 149 Wash.2d 707, 722, 72 P.3d 173 (2003)).
¶ 46 Regardless of Ferguson's intent, the order, as signed, did not in fact comply with the requirements of a TRO. A TRO granted under CR 65(b) without notice requires the party to certify to the court "the efforts, if any" made to give notice and "the reasons supporting [her] claim that notice should not be required." The hearing officer found that Ferguson made no effort to contact opposing counsel and found her declaration stating why notice should not be required (namely that she did not have time) to be false. CR 65(b) also requires a TRO granted without notice to "be endorsed with the date and hour of issuance," "define the injury and state why it is irreparable," state "why the order was granted without notice," and "expire by its terms within ... 14 days." (Emphasis added). The order, despite being labeled "temporary" in the heading, does not comply with these requirements. Ex. 38.[6]
¶ 47 The hearing officer correctly concluded that the order was not a TRO under CR 65(b) but rather a preliminary injunction and that as a matter of law, the relief granted in the order required notice and a hearing.

B. Count 2
¶ 48 With respect to count 2, the hearing officer concluded that "[b]y misrepresenting the actions and representations of the opposing party to the Court during the course of an ex parte appearance, Respondent negligently violated former RPC 3.3(f)." DP at 27.
¶ 49 Former RPC 3.3(f) (1985) provides that "[i]n an ex parte proceeding, a lawyer shall inform the tribunal of all relevant facts known to the lawyer that should be disclosed to permit the tribunal to make an informed decision, whether or not the facts are adverse."
¶ 50 Ms. Ferguson argues that the hearing officer's finding that she made misstatements due to negligence is incompatible with the legal conclusion that she did not disclose relevant facts that she knew at the time. Although it is unclear from the hearing officer's finding whether Ferguson's negligence was due to her failure to disclose facts that she knew or her failure to make herself aware of facts, other findings of fact support the hearing officer's conclusion that Ferguson did not disclose relevant facts that she knew at the time of the April 11 hearing.
¶ 51 The hearing officer found Ferguson was aware of the notice requirement in RCW 7.21.030(1) and failed to disclose that portion of the law to the court. He also found that she had made no effort to provide notice to Owens and had falsely stated to the court that she had not had time to provide notice. During the hearing, Ferguson admitted that faxing Owens was an option, but she neither faxed nor called Owens to provide notice. The hearing officer also found that Ferguson knew that the person living in the rental home was the Bransfords' son but only told the court he was a "vagrant." The record supports the conclusion that Ferguson knew these facts to be true but did not disclose them to the court at the ex parte hearing.
¶ 52 As discussed above, Ferguson also failed to disclose to the court that the Fergusons *1248 had recently provided notice to the Bransfords of the mortgage company's new certified funds requirement. This information was known to Ferguson and was relevant because it may have accounted for the mortgage company's delay in processing the Bransfords checks. 1 VTP at 77-78 (Owens testifying that Bransfords stopped payment and sent certified funds upon learning of new requirement). The record provides uncontroverted evidence that Ferguson knew of the certified funds notice, the notice was relevant, and Ferguson did not disclose this fact.
¶ 53 The findings of fact, as modified by the Board, support the conclusion that Ferguson violated RPC 3.3(f).

C. Count 3
¶ 54 The hearing officer concluded the following with respect to count 3:
In failing to provide the court with the legal authority which requires notice to an adverse party prior to issuance of an Order of Contempt and prior to issuance of a Write [sic] of Restitution Respondent knowingly violated RPC 8.4(c) and 8.4(d).
DP at 27.
¶ 55 RPC 8.4 provides that "[i]t is professional misconduct for a lawyer to ... (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; [or] (d) engage in conduct that is prejudicial to the administration of justice."
¶ 56 Ms. Ferguson argues it was unnecessary for her to provide notice for a contempt order or the writ of restitution, first, because the court was aware of these notice requirements already and, second, because notice was not required. She argues that she did not seek a remedy for contempt but merely attempted to schedule a hearing for a future date.
¶ 57 Ms. Ferguson's arguments are not supported by the record. The hearing officer's conclusion appears to be, in part, a finding of fact that Ferguson's omission of relevant authority was purposeful. This finding is supported by the hearing officer's finding that Ferguson quoted the first sentence of the statute but omitted the second sentence that provided the notice requirement, without ellipses or any other indication of her omission. Such conduct is deceptive regardless of the likelihood that the court is aware of the law and will discover the deception. Moreover, the order Ferguson urged the trial court to sign did make a finding of contempt, granted possession to the Fergusons on the basis of that contempt finding, and did not schedule a future hearing. The hearing officer quoted relevant language from the order in making his finding. Thus the hearing officer's finding of fact and the record in general supports the hearing officer's legal conclusion that Ferguson engaged in deception and prejudicial conduct in violation of RPC 8.4(c) and (d).

III. Sanctions
¶ 58 This court "accord[s] great deference" to the Board's recommended sanction but "`retain[s] ultimate authority for determining the appropriate sanction for an attorney's misconduct'" and may adopt, decrease, or increase the recommended sanction. In re Disciplinary Proceeding Against Hicks, 166 Wash.2d 774, 784, 214 P.3d 897 (2009) (internal quotation marks omitted) (quoting In re Disciplinary Proceeding Against Schwimmer, 153 Wash.2d 752, 757, 108 P.3d 761 (2005)). "Where a sanction is recommended by a unanimous Board, this court will uphold it `in the absence of a clear reason for departure.'" Id. (internal quotation marks omitted) (quoting In re Disciplinary Proceeding Against Behrman, 165 Wash.2d 414, 422, 197 P.3d 1177 (2008)).
¶ 59 After establishing that the violations occurred, the hearing officer and Board correctly looked to the American Bar Association's Standards for Imposing Lawyer Sanctions (1991 & Supp.1992) for guidance and engaged in the required two-step process: determining the presumptive sanction and considering aggravating and mitigating factors. Hicks, 166 Wash.2d at 778, 214 P.3d 897; In re Disciplinary Proceeding Against Eugster, 166 Wash.2d 293, 314-16, *1249 209 P.3d 435 (2009).[7]
¶ 60 The hearing officer applied the following standards to conclude that suspension was the presumptive sanction for Ferguson's violations of RPC 3.4(c), 3.5(b) and 8.4(d), and that reprimand was the presumptive sanction for her violation of RPC 3.3(f):
[Standard] 6.1 False Statements, Fraud and Misrepresentation provides:
6.13 Reprimand is generally appropriate when a lawyer is negligent either in determining whether statements or documents are false or in taking remedial action when material information is being withheld, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on a legal proceeding.
[Standard] 6.2 Abuse of the Legal Process provides:
6.22 Suspension is generally appropriate when a lawyer knows that he or she is violating a court order or rule, and causes injury or potential injury to a client or a party, or causes interference or potential interference with a legal proceeding.
[Standard] 6.3 Improper Communications With Individuals in the Legal System provides:
6.32 Suspension is generally appropriate when a lawyer engages in communication with an individual in the legal system when the lawyer knows that such communication is improper, and causes injury or potential injury to a party or causes interference of potential interference with the outcome of the legal proceeding.
DP at 28 (quoting, in part, ABA STANDARDS).
¶ 61 Ms. Ferguson challenges the mental state and injury underlying the hearing officer's choice of standards. Based on our earlier review of the hearing officer's findings of fact and conclusions of law regarding Ferguson's state of mind and the harm caused by her conduct, we believe the hearing officer applied the proper standards.

A. Aggravating and mitigating factors
¶ 62 The hearing officer found two aggravating factors based on his determination that Ferguson "does not acknowledge the wrongful nature of her conduct" and "has substantial experience in the practice of law including litigation." DP at 26 (imposing Standards std. 9.22(g), (i)). The hearing officer also found one mitigating factor, namely that Ferguson "has no history of prior disciplinary proceedings." DP at 27 (applying Standards std. 9.32(a)). Ferguson contests both aggravating factors and argues that additional mitigating factors should apply.
¶ 63 Ferguson contends that the hearing officer should have found the mitigating factor of "absence of a dishonest or selfish motive" because she was motivated out of a desire to help her brother. Br. of Resp't at 46; see STANDARDS std. 9.32(b). This court has addressed Standards std. 9.32(b) in three cases. In two of these cases, the court declined to find the mitigating factor because it found a selfish motive existed when the attorney retained paying cases despite an inability to provide effective counsel. Cramer, 168 Wash.2d 220, 225 P.3d 881 (retained cases despite revoked license); In re Disciplinary Proceeding Against Lopez, 153 Wash.2d 570, 576-77, 580, 106 P.3d 221 (2005) (retained case despite extremely busy schedule resulting in multiple missed filing deadlines). In the third case, this court declined to consider the hearing officer's finding of a selfish motive where the attorney did not provide any argument to support his claim. In re Disciplinary Proceeding Against Longacre, 155 Wash.2d 723, 746 n. 7, 122 P.3d 710 (2005). This court has noted that the mirror aggravating factor of dishonest or selfish motive has been applied when an attorney acted with motivation to secure *1250 financial advantage or sexual gratification or was generally dishonest in the context of "attorney misuse of client funds, forgery, perjury, and theft." In re Disciplinary Proceeding Against Day, 162 Wash.2d 527, 549, 173 P.3d 915 (2007); STANDARDS std. 9.22(b).
¶ 64 We need not decide whether Ferguson's actions were selfish because the findings clearly support the conclusion that they were dishonest. DP at 24 (finding that Ferguson made multiple false and misleading statements to the court). The hearing officer did not err in failing to apply the mitigating factor of lack of dishonest or selfish motive.
¶ 65 Ms. Ferguson also argues the hearing officer should have applied the mitigating factor of "inexperience in the practice of law" rather than the aggravating factor of substantial experience. Br. of Resp't at 46; Standards std. 9.32(f) (mitigator), 9.22(i) (aggravator). The record shows that Ferguson had substantial general experience in the practice of law, including litigation, but lacked specific experience in the area of temporary or emergency injunctive relief. Ferguson was admitted to the Oregon bar in 1993, and the Washington bar in 1997, giving her over 11 years of general experience in the practice of law.
¶ 66 This court has viewed the experience factor generally and has found "substantial experience" when an attorney had practiced law for 10 years or more at the time of the misconduct. Lopez, 153 Wash.2d at 580, 106 P.3d 221. For example, this court imposed the aggravating factor on an attorney with over 30 years of experience in the practice of law who dissolved his practice and formed a new one under a different name an attempt to avoid state taxes. Cramer, 168 Wash.2d at 238, 225 P.3d 881. The inquiry was not whether the attorney had experience in tax law, but how long the attorney had been practicing law generally. Id.; see also In re Disciplinary Proceeding Against Marshall, 167 Wash.2d 51, 85, 217 P.3d 291 (2009) (over 14 years of general experience practicing law at time of violations in context of negotiation and settlement).
¶ 67 The fact that Ms. Ferguson, by her own admission, had over 11 years of experience practicing law at the time of the alleged misconduct supports the hearing officer's finding that Ms. Ferguson had "substantial experience." The "substantial experience" aggravating factor was warranted here.
¶ 68 Next, Ferguson argues that the hearing officer should not have applied the aggravating factor of "refusal to acknowledge wrongful nature of conduct." STANDARDS std. 9.22(g). She argues that this reasoning "essentially punishes [her] for contesting the allegations against her." Br. of Resp't at 45 (citing Carmick, 146 Wash.2d at 605, 48 P.3d 311).
¶ 69 This court has acknowledged an attorney has the right to defend herself in an attorney disciplinary proceeding without automatically increasing her sanction through the application of Standards std. 9.22(g). See, e.g., Carmick, 146 Wash.2d at 605, 48 P.3d 311 (could not "fault Carmick for taking the position ... that the hearing officer was correct" where respondent prevailed before the hearing officer); Marshall, 167 Wash.2d 51, 217 P.3d 291 (declined to apply Standards std. 9.22(g) where attorney made arguments in his defense); In re Disciplinary Proceeding Against Holcomb, 162 Wash.2d 563, 588-89, 173 P.3d 898 (2007) (declined to apply Standards std. 9.22(g) where attorney claimed he did not engage in transactions with "client").
¶ 70 In Holcomb, this court explained that Standards std. 9.22(g) applies to an attorney who admits he engaged in the alleged conduct with a client but denies the conduct was wrongful or who "rationalize[s] improper conduct as an error." 162 Wash.2d at 588, 173 P.3d 898 (citing In re Disciplinary Proceeding Against Kronenberg, 155 Wash.2d 184, 117 P.3d 1134 (2005); In re Disciplinary Proceeding Against Dynan, 152 Wash.2d 601, 98 P.3d 444 (2004)); see also Lopez, 153 Wash.2d at 580, 106 P.3d 221 (similar reasoning to Holcomb: Standards std. 9.22(g) applied when attorney "`did not accept responsibility but sought to justify his conduct with explanations that were insufficient'" (quoting hearing officer's recommendation)).
¶ 71 Two cases cited by the comment to Standards std. 9.22(g) provide helpful examples of when Standards std. 9.22(g) applies: *1251 Greenbaum v. State Bar, 15 Cal.3d 893, 544 P.2d 921, 126 Cal.Rptr. 785 (1976), and Stanley v. Bd. of Professional Responsibility, 640 S.W.2d 210 (Tenn.1982). STANDARDS std. 9.22(g) cmt.
¶ 72 In Greenbaum, an attorney withdrew $11,000 from his client's trust fund for personal use without authorization. 15 Cal.3d at 896, 126 Cal.Rptr. 785, 544 P.2d 921. The court ultimately imposed suspension and probation. Id. at 905, 126 Cal.Rptr. 785, 544 P.2d 921. In considering aggravating factors, the California court stated the following:
[Mr. Greenbaum] appears unrepentant and continues to maintain that he was justified in using his client's personal trust funds to pay for legal services rendered to [his client's company] under ostensible authority in accordance with prior custom, even though he admitted that he had been instructed to redeposit the funds. He still argues that another $2,000 was expended for business trips and cash outlays to [his client] in spite of the fact that he was unable to substantiate any such expenditures. Moreover, contrary to his testimony that he requested [his client] to lend him $7,000, he asserted in his brief before this court that the April 7, 1971, withdrawal "was a loan suggested by claimant." Although he admitted that he kept personal funds in his regular trust account, and in the face of abundant documentary evidence that he used it to pay personal obligations, he contends that such commingling was "technical," and that the "draws" to himself of $8,358 was an "unfortunate labeling" because they in fact represented attorney fees that he was transferring to his personal or general accounts.
Id. (footnote omitted).
¶ 73 In deciding whether to apply Standards std. 9.22(g), the Greenbaum court was concerned that (i) the attorney appeared unrepentant and continued to maintain that he was justified in his conduct, (ii) his claim was contrary to his own testimony and controverted by abundant evidence, and (iii) the attorney excused the violation as merely "technical" or an "unfortunate labeling."
¶ 74 These considerations are also present in the second case cited in the ABA comment. In Stanley, an attorney was disbarred for a long list of misconduct accrued over multiple episodes. 640 S.W.2d 210. The list included usury, "lending money to a client without full disclosure," representing both the defendant and victim in the same criminal action, incompetent representation, and conflict of interest. Id.
¶ 75 Like Greenbaum, Stanley was unrepentant and continued to justify his actions. He did so despite abundant contrary evidence in the record and his own conflicting testimony. And, like Greenbaum, Stanley urged "spurious" excuses attempting to explain the violations as mere technicalities or unfortunate labeling.
¶ 76 Following our own case law and the comment to Standards std. 9.22(g), we find the record here supports applying Standards std. 9.22(g) to Ferguson. First, she expresses no remorse and consistently claims she has done nothing wrong and the case against her should be dismissed. In response to WSBA's investigation, she lashed out with a grievance of her own against another attorney. In addition, she displayed a hostile and obstructive demeanor before the hearing officer.[8]
*1252 ¶ 77 Second, Ferguson remains unrepentant "in the face of abundant documentary evidence," including, at points in the record, her own contrary testimony. Greenbaum, 15 Cal.3d at 905, 126 Cal.Rptr. 785, 544 P.2d 921. As discussed above, abundant evidence, including Ferguson's research notes, ex parte pleadings, and draft order, the PHH log and copies of checks, and official transcripts of various hearings before the trial court, all strongly support the finding that she committed the violations. Moreover, her own testimony is inconsistent as to a key issue of fact: whether on April 11 she intended to seek an ex parte hearing on the merits or merely intended to seek an ex parte hearing to schedule a later hearing on the merits.[9]
¶ 78 Third, Ferguson characterizes her violations as unfortunate labeling. She says WSBA incorrectly labeled the ex parte order she obtained as preliminary rather than temporary relief, and attributes this mislabeling to WSBA misconduct or, alternatively, to her own inexperience and poor drafting skills. She argues that if this court correctly labels her relief as temporary, a different rule will apply, which permits ex parte orders without notice under exigent circumstances. However, just as in Stanley and Greenbaum, her argument is simply not plausible.[10]
¶ 79 Under the facts of this case, the hearing officer properly applied Standards std. 9.22(g).

B. Increase in recommended suspension
¶ 80 Finally, Ferguson challenges the Board's decision to increase the suspension from 30 days to 90 days. The decision to increase the suspension was unanimous; however, two members of the Board voted to increase the suspension to 180 days rather than 90 days. The Board's decision, particularly a unanimous one, is entitled to "great deference" and, for reasons discussed above, Ferguson has not presented any "`clear reason for departure.'" Hicks, 166 Wash.2d at 784, 214 P.3d 897 (internal quotation marks omitted) (quoting In re Disciplinary Proceeding Against Behrman, 165 Wash.2d 414, 422, 197 P.3d 1177 (2008)). Furthermore, the Board's decision is supported by a reasoned analysis. Standards std. 2.3 states that "[g]enerally suspension should be for a period of time equal to or greater than six months." After considering aggravating and mitigating factors, the hearing officer concluded that "there [was] no basis to depart from the presumptive standard" but then inexplicably recommended a 30 day rather than 90 day suspension. DP at 29. The Board noted this inconsistency.
¶ 81 The Board also compared Ferguson's case to Carmick, 146 Wash.2d 582, 48 P.3d 311, in which the court upheld the Board's 60 day suspension for similar conduct. The Board in Carmick found seven aggravating factors and one mitigating factor, but this court reduced the aggravating factors to three. Id. at 605, 48 P.3d 311. Despite the reduction in aggravating factors, the Carmick court upheld the Board's 60 day suspension as "consistent with the sanctions imposed on other attorneys for similar conduct and is not clearly excessive." Id. at 607, 48 P.3d 311. The Board in Ferguson's case found a 90 day suspension "in proportion to and consistent with this Court's ruling in Carmick." DP at 33.
¶ 82 The Board did not err in adopting the hearing officer's findings on aggravating and mitigating factors or by increasing the suspension from 30 to 90 days. We adopt the Board's recommendation for a 90 day suspension and a reprimand.

IV. Costs
¶ 83 The Chair assessed costs against Ferguson under ELC 13.9(e). The Chair reasoned that WSBA had originally sought disbarment, but achieved only a 90 *1253 day suspension, and had failed to prove the most serious allegations against Ferguson. For these reasons, the Chair found it "in the interests of justice" to assess a reduced amount of costs. Compare Order at 2-3 (assessing $7,000.00) with Association's Statement of Costs and Expenses (ELC 13.9(d) (requesting $9,494.42)).
¶ 84 WSBA moved for reconsideration but the Chair filed the motion without action, believing he lacked authority to review his order. WSBA then filed a motion in this court to review the Chair's order.
¶ 85 WSBA argues that the Chair erred in failing to reconsider his ruling. The Chair explained that he did not have authority to review his decision. First, he noted that ELC 13.9(f)(2) provides that either party may timely request review of the Chair's cost assessment by the Board. WSBA requested review by the Chair rather than the Board. Second, the Chair noted that the Supreme Court had already accepted review. ELC 13.9(f)(1) restricts review of the Chair's orders to the Supreme Court when the case is pending review before the Supreme Court ("In matters reviewed by the Supreme Court under title 12 [of the ELC], the Chair's decision is subject to review only by the Court.").
¶ 86 We agree with the Chair that at the time of WSBA's motion to reconsider, only this court had reviewing authority.
¶ 87 WSBA also challenges the merits of the Chair's decision, arguing it has never sought disbarment and that it proved all counts against Ferguson.[11] WSBA says it is inappropriate to base an assessment of costs on the level of success by WSBA because the ELCs authorize costs against any attorney who is "sanctioned or admonished" and make no reference to the type of sanction being linked to the amount of costs assessed. Association's Resp. to Resp't's Reply to Association's Mot. for Review of Costs (Resp.) at 4; ELC 13.9(a). WSBA argues that allowing consideration of the extent of WSBA's success will impose an impermissible "prevailing party" requirement on WSBA cost claims. Resp. at 4.
¶ 88 This court reviews Chair cost assessments for abuse of discretion. In re Disciplinary Proceeding Against VanDerbeek, 153 Wash.2d 64, 99, 101 P.3d 88 (2004). Abuse of discretion is found "`only when the exercise of ... discretion is manifestly unreasonable.'" Id. (alteration in original) (quoting Rettkowski v. Dep't of Ecology, 128 Wash.2d 508, 518, 910 P.2d 462 (1996)). ELC 13.9(a) provides WSBA's costs "may be assessed ... against any respondent lawyer who is ordered sanctioned or admonished." In addition to the use of "may" in ELC 13.9(a), ELC 13.9(h) refers to the Chair's authority in assessment determinations as "[d]iscretionary" and provides "[a]ssessment of any or all costs and expenses may be denied if it appears in the interests of justice to do so."
¶ 89 Contrary to WSBA's assertion, VanDerbeek, the permissive language of ELC 13.9(a), and the "interests of justice" standard of ELC 13.9(h) authorize broad discretion. WSBA is correct that it need not prove that it is the substantially prevailing party in order to claim costs. However, the Chair was also not required to assess any fees against Ferguson. The Chair chose to reduce the costs assessment based on his belief that the "interests of justice" so required where Ferguson was cleared of the most serious allegations and suspended rather than disbarred. Disciplinary Board Chair Order Assessing Costs and Expenses (ELC 13.9(e)) at 3.
¶ 90 WSBA urges this court to reconsider the Chair's decision under CR 59(a)(7) (insufficient evidence or error of law), CR 60(a) (correction of clerical mistakes before appellate review accepted) and CR 60(b)(11) ("[a]ny other reason justifying relief."). We agree that the civil rules "provide guidance" for proceedings under the ELCs. ELC 10.1. For example, in In re Disciplinary Proceeding *1254 Against Sanai, 167 Wash.2d 740, 753 n. 4, 225 P.3d 203 (2009) this court applied CR 36(a) and 26(c) because those rules specifically authorized the types of admissions at issue where the ELCs had no rule on point. 167 Wash.2d at 753, 225 P.3d 203. The reasoning of Sanai does not apply here, however, because ELC 13.9(a) specifically applies. The "guidance" of the civil rules does not overcome the explicit mandates of ELC 13.9, whose clear requirements are outlined above. See ELC 10.1; cf. ELC 12.1 (RAPs provide general rule, but specific ELCs control).
¶ 91 We find that the Chair did not abuse his discretion in reducing costs.

CONCLUSION
¶ 92 We affirm the order of the Board suspending Sandra Ferguson for 90 days. In addition, the Chair's assessment of reduced costs appropriately considered the interests of justice and was not an abuse of discretion.
WE CONCUR: CHARLES W. JOHNSON, TOM CHAMBERS, SUSAN OWENS, MARY E. FAIRHURST, DEBRA L. STEPHENS, Justices, and RICHARD B. SANDERS, Justice Pro Tem.
ALEXANDER, J. (concurring/dissenting).
¶ 93 Although I agree with the majority's determination that Sandra Ferguson should be suspended from the practice of law, I disagree with its conclusion that the suspension should be for a 90-day period. In my view, Ms. Ferguson should be suspended for 180 days. As the majority notes, the American Bar Association's Standards for Imposing Lawyer Sanctions standard 2.3 (1991 & Supp. 1992) (ABA Standards) provide that a suspension should generally be for "`a period of time equal to or greater than six months.'" Majority at 1252 (quoting ABA Standards std. 2.3). Inexplicably, the hearing officer concluded, after observing that there was no basis to depart from the presumptive standard, that Ms. Ferguson should be suspended for 30 days. Although the Washington State Bar Association Disciplinary Board ultimately recommended, albeit with two members of the board dissenting, that this court increase the suspension to 90 days, it provided no reason for not seeking a sanction consistent with the ABA Standards. Absent some explanation for imposition of a relatively lenient sanction of 90 days, I cannot accept the majority's adoption of the board's recommendation. I, therefore, dissent as to the penalty.
NOTES
[1] Ultimately, Mrs. Bransford did not testify on this point.
[2] The Board modified findings of fact 16 and 17. In finding 16, the hearing officer determined that Ferguson's failure to provide notice to Owens deprived the Bransfords of the opportunity to present their legal and equitable arguments for possession of the house. In finding 17, he determined that if Ferguson had provided notice the court might not have granted the Fergusons relief. The Board reasoned that these findings amounted to the hearing officer's unsupported speculation regarding what evidence would have been presented at the hearing and what the result of the hearing would have been.

The Board's decision to increase the suspension was unanimous. However, two members of the Board voted to increase the suspension to 180 days.
[3] Ferguson contests findings of fact 6, 19-22, and 25-27 on the basis that they are not supported by substantial evidence. DP at 20-26.
[4] Owens' statement that he received notice around April 13 is supported by the testimony of Ferguson and Julianne Ferguson, who both assert Ferguson gave the pleadings and order to Julianne Ferguson after the April 11 hearing to deliver to Owens, and Julianne delivered the documents within two days.
[5] Andrew Ferguson testified that Ferguson had copies of the March 30 hearing transcript before the April 11 hearing. There is conflicting evidence as to whether Ferguson subjectively knew her statement regarding nonpayment of the mortgage was false or could have discovered as much with more diligent effort. Ferguson claims she based her statement on information from Julianne Ferguson, who in turn claims the mortgage company informed her as late as the morning of April 11 that the payments had not been made. However, a PHH employee also testified that on April 11, PHH records would have indicated that the payments had been made. We defer to the hearing officer's determination of credibility.
[6] An altered copy of the order was submitted by Ferguson showing a handwritten time and location. Ex. 64. Ferguson denied the handwriting was hers. 1 VTP at 243-44, 239-40. No initials appear next to the handwritten alterations.
[7] If raised by the respondent, this court must also consider two factors from In re Disciplinary Proceeding Against Noble, 100 Wash.2d 88, 667 P.2d 608 (1983): the proportionality of the sanctions and the extent of agreement between Board members. Hicks, 166 Wash.2d at 785, 214 P.3d 897; Eugster, 166 Wash.2d at 315, 209 P.3d 435. Ferguson did not raise the issue of proportionality until her reply brief. This new argument is not discussed here as it was stricken upon WSBA's motion.
[8] Ferguson's behavior before this court continues to reflect a lack of remorse. She has filed motion after motion raising issues that are beyond the scope of review. In one motion Ferguson mischaracterized a statement made by WSBA in a declaration submitted to this court. Based on this allegation, which was without foundation, she accused the attorney of lying and requested sanctions. Ferguson raised several new issues in the reply brief (or later motions) despite warnings from the Supreme Court Clerk that new issues were not permitted. In re Disciplinary Proceeding Against Kennedy, 80 Wash.2d 222, 236, 492 P.2d 1364 (1972);" Supreme Court Order (July 9, 2010) (granting WSBA's motion to strike new arguments and evidence outside record); Ferguson's Reply to WSBA's Mot. to Strike & Cross Mot. to Make Additions to Record Under ELC 12.5(e) at 8-12 (due process), 1-8 (equal protection); Resp't's Mot. for CR 11 Sanctions Against WSBA & Its Counsel at 12 (WSBA misconduct). Because these issues were raised too late, and the allegations of WSBA attorney misconduct are entirely without merit, we granted WSBA's motion to strike portions of Ferguson's reply brief, denied as moot WSBA's motion to seal the same, and denied both parties' motions to supplement the record with information relevant to these issues.
[9] E.g., 3 VTP at 544 (Ferguson testified she did not anticipate having, or intend to have, an ex parte hearing on April 11); but see id. at 563-64 (Ferguson admitted ex. 73, her first response letter to WSBA, stating that "on April 11th, I drove up to Anacortes again to either set a hearing date for the motion or, if possible, be heard on the motion, ex parte.").
[10] Even if she was legally correct, the hearing officer found her claim of exigent circumstances to be false. DP at 24. Thus, the legal argument she advances is not factually available to her.
[11] WSBA points out that it specifically requested six months' suspension and never requested disbarment. However, the Chair correctly observed that at the hearing, WSBA sought to prove findings that would support disbarment. In fact, WSBA specifically pointed out to the hearing officer that if WSBA succeeded in proving the facts, the hearing officer would have discretion to impose disbarment as a sanction regardless of WSBA's requests.